[S. F. No. 8843. In Bank.—May 29, 1919.]

In the Matter of the Estate of JENNIE HOYTEMA, Deceased. VICTOR L. EDWARDSON et al., Respondents, v. ANNA HANSEN et al., Appellants.

[1] ESTATES OF DECEASED PERSONS—WILL—CONTINGENCY OF DEATH PRIOR TO TESTATRIX—INTESTACY.—A will entirely written, dated, and signed by the hand of the testatrix and almost entirely written in the Danish language requesting that in the event of her death the will be sent to her brother, and that should he be dead, then her brother's daughter and her deceased sister's daughter should together sell all the property of the testatrix and divide it equally between the children of her deceased sister, and then providing for two specific money bequests to a niece and to a friend, makes the division of the property among the children of the deceased sister conditional upon the death of the brother before the death of the testatrix, and where the brother survived the testatrix the two specific bequests constituted the only effective disposition made by the will and as to the remainder of the estate the testatrix died intestate.

[2] ID.—CONSTRUCTION OF WILLS — INTESTACY NOT FAVORED. — Constructions of wills leading to intestacy, total or partial, are not favored and will be rejected when the language used reasonably admits of a construction that renders the will effective as to all the property of the decedent.

[3] ID.—INTENT OF TESTATOR — LANGUAGE OF WILL.—While the language used in a will must be liberally construed with a view to carrying into effect what the will as a whole shows was the real intent of the testator, this intent must be found in the language, taking into view in cases of uncertainty arising upon its face the circumstances under which it was made.

[4] ID.—CONSTRUCTION BASED ON CONJECTURE PROHIBITED.—Courts are not permitted, in order to avoid a conclusion of intestacy, to adopt a construction based on conjecture as to what the testator may have intended, although not expressed.

APPEAL from a decree of partial distribution of the Superior Court of the City and County of San Francisco. Thomas F. Graham, Judge. Affirmed.

The facts are stated in the opinion of the court.

Shelton & Levy for Appellants.

Lloyd S. Ackerman, Joseph E. Reardon, Wm. M. Abbott, Wm. M. Cannon and Kingsley Cannon for Respondents.

ANGELLOTTI, C. J.—This is an appeal from a decree of partial distribution. The only appellants are the four children of decedent's deceased sister, Anna Mathieson, residents of the kingdom of Denmark, who claim that under a writing admitted to probate as the last will of decedent they are entitled to all of the estate of deceased except two legacies of five hundred dollars each. The lower court concluded that such writing was insufficient as a will or otherwise to dispose of the estate of decedent except as to the said two legacies, and that as to all of the estate over one thousand dollars so disposed of the decedent must be held to have died intestate. The effect of the decision is that except as to one thousand dollars to be paid on the two legacies, the estate of decedent will go, one-third to Hans Peter Nelson, surviving brother of decedent; one-third to the three surviving children of her deceased sister, Bena G. Edwardson, one of whom is named Agnes; and one-third to the appellants here, the surviving children of her deceased sister Anna Mathiesen, these being all of her heirs at law.

The record is such that we are bound by the finding of the lower court as to the contents of the will, which, the bill of exceptions shows, was entirely written, dated, and signed by the hand of the decedent and was almost entirely in the Danish language. The trial court by a finding unquestioned by any specification of insufficiency, declared the same to be in the words and figures following:

"San Francisco, October 5, 1915.

"I am writing these lines in case I should meet with an accident or in any other way die then it is my wish if my brother Hans Peter Nelson is alive send this letter to him. Should he be dead then it is my wish that my brother's

daughter Emma and my dead sister Bena's daughter who lives in Chicago, her name is Agnes, shall together sell all my property and divide equally between my dead sister Anna's children by the name Engeborg, Anna, Alfrida, and Otto, living in Copenhagen and Nakskov. It is my wish that my niece Emma Nelson receive $500. extra for her taking care of me. It is also my wish that my friend Mrs. Rosa Friis shall be given $500.

"Mrs. Jennie Hoytema,

"94 Sanchez Street.

"P. S.—My safe deposit box is in the Humboldt Savings Bank No. 295."

The niece, Emma Nelson, referred to herein is the daughter of the brother, Hans Peter Nelson, who survived decedent.

The lower court was of the opinion that the testamentary disposition so apparently made in favor of the children of the dead sister, Anna, was conditioned upon the death before her own death of her brother Hans Peter Nelson. · [1] This view was upheld by the decision of Department Two of this court, the opinion being written by Mr. Justice Lennon, and upon mature consideration we believe this to be the correct view. We recognize that this construction results in almost total intestacy, in view of the fact that her brother survived decedent, and also that [2] constructions leading to intestacy, total or partial, are not favored, and will be rejected when the language used reasonably admits of a construction that renders the will effective as to all the property of the decedent. [3] It is also an elementary rule in the construction of wills that the language used must be liberally construed with a view to carrying into effect what the will as á whole shows was the real intent of the testator. This intent, however, must be found in the language used in the will, taking into view in cases of uncertainty arising upon its face the circumstances under which it was made. (Civ. Code, sec. 1318.) [4] Courts are not permitted in order to avoid a conclusion of intestacy to adopt a construction based on conjecture as to what the testator may have intended, although not expressed. In the case at bar we have a testatrix whose next of kin were a brother and the children of two deceased sisters. Her brother was her nearest relative. No reason whatever appears why in disposing of her property she should discriminate against him in favor of children of one or both of her deceased sisters.

Certainly in her very informal will she does not do so in plain and unambiguous terms. To the contrary, her first thought is of him, and her first expression of desire is "it is my wish if my brother, Hans Peter Nelson is alive, send this letter to him." No express direction or desire as to what is to become of her property in that contingency or what he is to do in the matter appears. It is as though in the mind of the testatrix this was to be the end of the whole matter. If we were at liberty to resort to conjecture as to the intent we might well conclude from the language that she thought she was giving the property to him in this contingency or that he would then take the property as her nearest relative. It is only "should he be dead" that she has any desire to express in regard to the disposition of her property, and her desire in that contingency is that her dead brother's daughter Anna, and her dead sister Bena's daughter should sell the property and dispose of it in the way indicated. Appellants seek to make the primary object of the instrument the distribution of the property in any event in the manner specified in the portion commencing "should he be dead," and to do this find it necessary to construe the directions to Emma and Agnes as being intended as applicable to the brother in the event that he survived decedent, although no such idea is expressed. It is sufficient to say that no such intention is expressed with reasonable certainty, and that under the circumstances any such conclusion would be based solely on conjecture. As was said in the department opinion: "Only through speculation and conjecture may the construction contended for by appellants be confirmed. And this cannot be countenanced in view of the cardinal rule to the effect that in the interpretation of wills it is not the probable intent which may have existed in the mind of the testatrix which prevails, but only that which is expressed in the language of the will. (*Estate of Blake,* 157 Cal. 448, [108 Pac. 287].) We are satisfied that the appellants cannot fairly be held to take anything under the will. By the decree they are adjudged their rightful share as heirs of deceased. No objection is made by them as to the allowance of the two legacies of five hundred dollars each, a matter apparently settled by the decree. All parties to the estate have acquiesced in their allowance.

It may be noted that appellants claim that the translation of the will embodied in the court's finding is not entirely correct, and append to their brief what they call a "literal translation." While we are bound by the translation found, we do not think that the so-called "literal translation" would materially help appellants. In the same connection respondents suggest that, properly translated, the provision as to the disposition of the property by Emma and Agnes is that they "shall together sell my property and *share with* [instead of *divide between*] Anna's children, the Danish word "udele" used meaning "share" and not "divide." This would produce the very natural and reasonable conclusion that even had the brother predeceased the decedent, appellants under the will could take only one-third of the property, and would entirely explain the use of the word "extra" in the five hundred dollar bequest to Emma Nelson.

The decree is affirmed.

Lennon, J., Wilbur, J., and Melvin, J., concurred.

SHAW, J., Dissenting.—I dissent.

In my opinion certain well-established rules of interpretation applying especially to wills, when considered in connection with this will, give it a meaning different from that given to it by the majority opinion.

The primary object of a court, when an ambiguous will is before it, must be to ascertain, as far as possible from its language, the intention of the testator. (Civ. Code, sec. 1318.) All its parts are to be construed in relation to each other, and so as, if possible, to form one consistent whole. "Of two modes of interpreting a will, that is to be preferred which will prevent a total intestacy." (Civ. Code, sec. 1326.) Words which are irreconcilable with the general context may be rejected, whatever the local position which they happen to occupy. (1 Jarman, *445.) Where it is clear on the face of a will that the testator's meaning is not completely expressed by the words used, and it is also clear what are the words which he has omitted, those words may be supplied in order to effectuate the intention, as collected from the context. (1 Jarman, *p. 451; 1 Redfield on Wills, 454.) Many instances of this rule are given by Mr. Jarman at page

*455. Where an expression, otherwise senseless or contra-dictory, ·can be rendered consistent with the context by being transposed, such transposition is warranted. (Id., *466; 1 Redfield on Wills, 467.) Punctuation may be disregarded if a change in that respect will render its meaning more obvious. (1 Redfield on Wills, 434.) In construing wills drawn by persons unskilled in the art ''it is the duty of the courts to spell out the probable relative importance of the different pro-visions, ·and how far one was intended to yield to another, when it becomes impracticable to carry all into effect. (1 Redfield on Wills, 452.)

A striking instance of the liberality indulged in these particulars in considering holographic wills drawn by illiter-ate persons is found in the decision of this court in *Estate of Stratton,* 112 Cal. 517, [44 Pac. 1028]. The will in that case, after a number of specific gifts, concluded as follows:

''Common Beadsteads with Feather Bead and all the rest of the Furniture and all Money in what Ever Shape *he* will have full controle after Expenses is Paid on my sickness and death.

''MRS. GEORGIANA HANHAM STRATTON.

''My Husband.

''Thomas Stratton.''

It was held that the will could be made clear by transposing the words ''my husband Thomas Stratton,'' from the place below the signature of the testatrix to a place immediately after the word ''he,'' and this being done, it was construed to make a gift to the husband of the residue of the estate.

Coming now to the will here involved, we repeat it in full to facilitate the discussion.

''San Francisco, October 5, 1915.

''I am writing these lines in case I should meet with an accident or in any other way die then it is my wish if my brother Hans Peter Nelson is alive send this letter to him. Should he be dead then it is my wish that my brother's daughter Emma and my dead sister Bena's daughter who lives in Chicago, her name is Agnes, shall together sell all my property and divide equally between my dead sister Anna's children by name Engeborg, Anna, Alfrida, and Otto, living in Copenhagen and Nakskov. It is my wish that my niece Emma Nelson receive $500. extra for her taking care of me.

It is also my wish that my friend Mrs. Rosa Friis shall be given $500.

"MRS. JENNIE HOYTEMA,

"94 Sanchez Street.

"P. S.—My safe deposit box is in the Humboldt Savings Bank No. 295."

The opening sentence disclosed the testamentary intent. The mind of the writer then turned to the selection of a person to carry out her intent, to act as executor. It may readily be supposed that her brother would be preferred for that office, and, accordingly, she named him, saying, "send this letter to him" if he is alive. In her ignorance, she evidently believed that if the letter were placed in his hands he would be thereby authorized to dispose of the property as the will directed. But it occurred to her that he might be dead and in that event a substitute must be designated. For that purpose she chose two nieces, Emma, daughter of the brother, and Agnes Edwardson, daughter of her sister. She then came to the point of stating what was to be done with the property. The instructions to those to whom the office of executor should fall were "to sell all my property and divide equally between my dead sister Anna's children, by name Engeborg, Anna, Alfrida, and Otto, living in Copenhagen and Nakskov." These words are certain and their effect is absolutely clear. They cannot be given any other meaning than that conveyed by the ordinary sense of the words, unless a clear intention to use them in some other sense can be collected from the context or from extrinsic facts. (Civ. Code, sec. 1324.) No extrinsic facts appear, and the context furnishes no cause for giving them other than their ordinary import. The use of the word "extra" in the gift of five hundred dollars to Emma is easily explained. The gift shows on its face that Emma had been taking care of the testatrix. Apparently Emma was the only relative she had in California. Her brother lived in Idaho, and the other heirs in Illinois and Denmark. It is to be supposed that Emma had already received something for this service and the intent evidently was, as the words indicate, to give her an additional compensation therefor. To give it the effect of qualifying or explaining the meaning of the preceding disposition in any manner, would violate the rule that "a clear and distinct devise or bequest cannot be affected" by any other words "not equally clear and distinct."

I think the will on its face clearly gives the residue of the estate to the children of Anna, the deceased sister of the testatrix, and that it left nothing undisposed of to go to the other heirs.

Lawlor, J., and Olney, J., concurred.

Rehearing denied.