[Civ. No. 12999. First Dist., Div. One. May 6, 1946.]

Estate of WILLIAM O'BRIEN, Deceased. ANNA F. BOIVIN et al., Appellants, v. MARY E. RHEAD, as Administratrix With the Will Annexed, etc., et al., Respondents.

Douglas Nye, Phillip Barnett and Robert L. Dreyfus for Appellants.

Duncan A. McLeod, Edmund Scott and Jos. R. Fitzpatrick for Respondents.

PETERS, P. J.—Appellants Anna F. Boivin and Margaret Hallahan filed this petition to determine heirship in the estate of William O'Brien, alleging that they are first cousins of the deceased, that he died intestate as to a portion of his estate, and that as heirs at law they are each entitled to a one-fourth interest in the portion of his estate not willed to others. The trial court determined that the deceased had not died intestate and that there was no portion of his estate to which petitioners are entitled.

It is admitted that if O'Brien died intestate as to any portion of his estate, petitioners, as two of his first cousins, are entitled to a portion of such estate. The question presented to the trial court and now involved on this appeal is whether O'Brien died wholly testate or partially intestate. The solution of this problem turns upon the interpretation of a document admittedly testamentary in character, and admittedly properly executed by O'Brien. The document, wholly written, dated and signed by the testator, reads as follows:

"Sept. 15 1943

"To Mr and Mrs Frank Bell

For their kindness and service to me I will to them the Casey ranch my intire stock of sheep cattle horses rig and my dog Lexcie and Three Thousand dollars.

Mrs Mary Rhead Mrs Preugschat will take charge of the rest inculding bonds

And Oblige

William O'Brien"

This document has been admitted to probate and Mary E. Rhead has been appointed and qualified as administratrix with the will annexed. At the hearing on the present petition the will was offered and admitted into evidence and it was stipulated that Anna Boivin, Margaret Hallahan, Mary Rhead and Margaret Preugschat are all first cousins of the deceased. No other evidence was introduced at the hearing relative to the proper interpretation of the will. The trial court found that by the will the decedent intended to dispose of his entire estate, and that by the last sentence he intended to and did bequeath the residue and remainder of his estate to Mary Rhead and Margaret Preugschat. It is from the judgment based on this finding that petitioners appeal.

Inasmuch as no extrinsic evidence was introduced, the question of the document's proper interpretation becomes a question of law and not of fact. We agree with appellants that under the circumstances here existing this court must exercise an independent judgment on the issue and is not bound by the conflicting evidence and inference rules applicable to fact appeals. (*Estate of Platt*, 21 Cal.2d 343 [131 P.2d 825]; *Western Coal & Mining Co.* v. *Jones*, 27 Cal.2d 819 [167 P.2d 719].)

The controversy hinges upon the proper interpretation of the last sentence which reads: "Mrs. Mary Rhead Mrs. Preugschat will take charge of the rest inculding bonds." If the testator had merely said that the named persons "will take . . . the rest," there would be no doubt at all that the sentence was intended to constitute a bequest of the residual estate. Appellants contend that since the testator added "charge of" after the word "take" that he must have intended that the named persons should simply administer or care for the balance of the estate. Appellants urge that this is the ordinary meaning of "take charge of," and that the words must

be given their ordinary meaning. Much is made of the fact that in the first sentence of the document he used the word "will," it being argued that when the testator desired to make a bequest he knew the proper term to use. It is argued that if the testator meant the same thing by sentence two as by sentence one he would naturally have used the same language and that by the use of different language he must have meant different things. It is contended that the interpretation of the trial court has resulted in striking from the will the words "charge of," it being urged that a court has no power to rewrite a will or to delete therefrom any material portion.

The respondents urge that the interpretation of appellants would mean that the testator intended to appoint the two persons named in the last sentence as executrices of only a portion of the estate, and urge that this is a legal impossibility. Respondents also point out that the testator quite obviously had difficulty in expressing himself, and that it would defeat his obvious intent to give the words "take charge of" their technical meaning of "to administer." Other contentions are made by both parties.

It is our duty to try to ascertain what the testator had in mind when he drafted the last sentence of his will. On such an issue precedents are of but little value, except for the establishment of certain general rules. ▉ In interpreting a will the paramount rule is to attempt to ascertain the testator's intent from the words used. ▉ The document must be read and construed as a whole, and all parts of the will are to be construed together and in relation to each other so as to form, if possible, a consistent whole. ▉ One of the important rules of construction peculiarly applicable to the present case is that in the absence of controlling language in the will to the contrary, it will be presumed that a testator intended to dispose of all of his property. ▉ An interpretation, if reasonably possible that will prevent a partial intestacy is to be preferred to one that would require such partial intestacy. (*Estate of Spence,* 57 Cal.App.2d 922 [135 P.2d 419] ; *Estate of Lawrence,* 17 Cal.2d 1 [108 P.2d 893] ; *Estate of Ottoveggio,* 64 Cal.App.2d 388 [148 P.2d 878].) ▉ The very fact of making a will raises a presumption that the testator intended to dispose of all of his property. (See many cases collected and commented upon in 26 Cal.Jur. § 215, p. 899.)

Of course, this rule will not be applied where the will clearly expresses a contrary intention, nor will it be applied where to do so would result in disregarding any of the language used. (*Estate of Peabody,* 21 Cal.App.2d 690 [70 P.2d 249] ; *Estate of Hoytema,* 180 Cal. 430 [181 P. 645] ; *Estate of Beldon,* 11 Cal.2d 108 [77 P.2d 1052].)

██ Appellants must contend, and do, that the phrase "take charge of" is so clear that it can have but one reasonable meaning, namely, that the testator was appointing the two persons named executrices of his estate. If it once be conceded that the phrase, when read with the balance of the document, is ambiguous and susceptible of the reasonable interpretation that it amounted to a bequest of the residual estate, the presumption against partial intestacy is sufficiently strong to require this court to interpret the phrase in favor of respondents. That presumption is based on common sense and common experience. Normally, a man does not sit down and draft a will that disposes of only a portion of his estate. It is a solemn act to draft a will, and in the normal case it is the result of mature deliberation and careful thought. When this factor is considered, and the will read as a whole, we are of the opinion that the phrase "take charge of" is sufficiently ambiguous to require interpretation, and is reasonably capable of either of the interpretations here urged. This being so, the weight of the presumption heretofore discussed is sufficient to tip the balance of reasonable probabilities in favor of respondents. This testator obviously had difficulty in expressing himself in writing. He first wanted to be sure that Mr. and Mrs. Frank Bell received the Casey ranch, its stock and equipment, his dog, and some money. He expressed himself as basing this bequest upon their "kindness and service" to him. But that did not dispose of his entire estate. There was a substantial portion of the estate left. So he drafted the second sentence and said that respondents "will take charge of the rest inculding bonds." Is it reasonable to suppose that by the use of such words he simply intended to appoint the two respondents executrices and to permit the balance of his estate to go to his heirs at law, whoever they might be? Is it reasonable to suppose that by the use of the questioned phrase he had in mind the technical meaning of the words, namely, "to administer"? Is it not more reasonable to suppose that he was using the phrase somewhat colloqui-

ally to mean that they were to get the balance? Certainly, we cannot say that the only reasonable interpretation is that sponsored by appellants. That reached by the trial court and urged by respondents seems to us to be equally reasonable. That being so, we should and do determine that the last sentence amounted to a bequest of the residuum to respondents.

Respondents make a somewhat involved argument that because the trial court appointed Mary Rhead administratrix with the will annexed, that it must have determined in that proceeding that the will did not name her and Mrs. Preugschat as executrices. The respondents argue that in that proceeding, therefore, the court must have also determined that the two respondents were devisees, and contend that such determination is res judicata in this proceeding. This point is clearly without merit. On that hearing the court simply decided that the respondents were not executrices—it did not, and in that proceeding could not, determine whether they were legatees or devisees. The right of any person to take under the will was not then in issue.

The judgment appealed from is affirmed.

Knight, J., and Ward, J., concurred.