[Civ. No. 13269. First Dist., Div. One. Feb. 19, 1947.]

Estate of JULIA M. NORRIS, Deceased. BOSWELL F. KING et al., Appellants, v. MARGARET WEBSTER KING, Individually and as Executrix, etc., Respondent.

Erskine & Erskine and McCutchen, Thomas, Matthew, Griffiths & Greene for Appellants.

Brobeck, Phleger & Harrison, Maurice E. Harrison and Moses Lasky for Respondent.

PETERS, P. J.—The trustee of a testamentary trust created by the will of Julia M. Norris, deceased, petitioned the trial court for final settlement of its account as trustee, requested that the trust be terminated, and requested that the trial

court determine to whom the trust corpus should be distributed. The present appeals are from that portion of the order instructing the trustee as to the proper distribution of the trust property.

Thomas Starr King and Boswell F. King, the two appellants, herein, claimed in the trial court, and now claim on this appeal, that the trust corpus, of the value of approximately $600,000, should be distributed equally between them. Margaret W. King, respondent herein, individually and as the executrix of the estate of her husband William N. King, who died in 1937, claimed in the trial court, and that court so held, that one-third of the corpus should be distributed to her or to the estate of her deceased husband.

The facts giving rise to this controversy are not in dispute and are as follows: Julia M. Norris was first married to Thomas Starr King. This couple had two children, Frederic and Edith. Edith died before the date of distribution of the estate of her mother and in no way figures in this controversy. After the death of Thomas Starr King, Julia married William Norris, who predeceased her. This couple had no children. Frederic married Edith Boswell King, and this couple had three children, Boswell F., Thomas S., the appellants, and William N., the husband of respondent. The will of Julia Norris was executed in 1898, she then being 70 years of age. She died in 1904. The decree of distribution in her estate was made and entered on October 1, 1909. No appeal was taken therefrom, and that decree has long since become final. It is the proper interpretation of that decree that is involved on this appeal.

When the will was executed in 1898 Frederic King, the son of Julia, and his wife Edith B. King, had three sons, the only grandchildren of Julia, being the two appellants, and the respondent's decedent. These are the only children of this couple. When the will was executed these grandchildren were aged 12, 10 and 7 respectively. One of these grandchildren, William N. King, married respondent in 1924. This couple had no children. William died in 1937. By his will he made his wife, the respondent, his sole legatee. William N. King was survived by both his father and mother. His father, Frederic, died on July 8, 1941, and his mother, Edith B. King, died July 10, 1945. The trusts set up in the will of Julia M. Norris terminated upon the death of Edith B. King, and upon such termination, there being a dispute as to whom

the corpus should be distributed, this proceeding was instituted.

By the terms of her will Julia M. Norris evidenced an intent to take care of her son and his family, but also clearly indicated great confidence in her daughter-in-law, Edith, and an intent to benefit her. After making certain specific bequests, she devised her entire residuary estate in trust, which trust was to continue until the death of her son Frederic and her son's wife, Edith B. After directing the trustee to pay certain sums to persons not here involved, in paragraph "D" of the trust provisions she directed the trustee to pay to her daughter-in-law, Edith Boswell King, $500 per month for life to be used for the maintenance of Edith and her husband, the testatrix's son, Frederic, and the support, education and maintenance of their children or the survivors. In this paragraph she referred to these three children by name, being Boswell Farrington King, Thomas Starr King, the appellants, and William Norris King, respondent's decedent. In this paragraph she provided that if Frederic should survive Edith the trustee should pay Frederic but $150 per month for life, and to pay $350 per month to "such of the said above mentioned children as may survive their said mother, or their survivors," until the termination of the trust. In the next paragraph—"E"—she directed the trustee to accumulate surplus income and every five years to pay four-fifths of the income thus accumulated to her daughter-in-law, Edith Boswell King, to be used by her "for the benefit of herself and her said husband and their said children," and after her death to pay the same in the ratio and to the persons as provided in paragraph "D." In paragraph "G" she directed the trustee to pay the taxes and insurance on the house occupied by her son and his wife "while owned by my said daughter-in-law, Edith Boswell King." In paragraph "H" she provided that "if either of the above named children of my son Frederic Randolph King and Edith Boswell King" desire a college education, such education shall be paid for by the trustee. Paragraph "I" provides that the trusts are to continue until the death of both Frederic and his wife and "then to be at once at an end." Then follows paragraph "J," which is the specific paragraph that has led to this litigation. It provides that following the termination of the trusts as provided in the preceding paragraph: "Thereupon and at once the said trustee shall grant and deliver all my

property then in its hands, or remaining of said trust, unto the children, (share and share alike, or their legal heirs by right of representation) of my said son and his said wife Edith, and I hereby, subject to the trusts aforesaid, give, devise and bequeath all said last named property to the persons last aforesaid in manner aforesaid.'' There follows two paragraphs not pertinent here, and then in paragraph ''M'' it is provided: ''I provide and declare that any other child or children which may be born to my said son and his said wife Edith may and shall share with and have the same rights under said trusts as their said children herein specifically named.''

This will was probated and the final decree of distribution was made and entered by the probate court October 1, 1909. In that decree, which has long since become final, after settling the final account, the will is set forth *in toto*, it being introduced into the decree with this language: ''And it further appearing that said decedent left a last will and testament which has been duly admitted to probate, which last will is in the words and figures as follows, to wit:'' After quoting the will and noting that the specific bequests had been paid, the decree ordered, adjudged and decreed that the residuary estate be distributed to the trustee subject to the trusts. In drafting the decree of distribution the probate court followed substantially the language of paragraphs ''D,'' ''E'' and ''H'' of the will. In particular the three children of Frederic and Edith were specifically named in paragraph ''2'' of the decree in connection with the $500 monthly to be paid their mother for the support of parents and children, and in paragraphs ''3'' and ''6,'' corresponding to paragraphs ''E'' and ''H'' of the will, the three children were referred to as ''said children'' and ''the above named children.'' Then the probate court in making its decree changed the order of the paragraphs as found in the will. It will be remembered that in the will the so-called ''after-born'' clause appears in paragraph ''M,'' following the basic paragraph ''J.'' In the decree the ''after-born'' clause appears in paragraph ''8,'' and the basic paragraph follows the ''after-born'' paragraph. In paragraph ''8'' the probate court slightly changed the language of the will. In the decree the ''after-born'' clause reads: ''If any other child or children shall be born to the said Frederic R. King and his said wife Edith Boswell King, such child or children shall share with and have the same rights under this trust as the children hereinbefore specifically named.''

This paragraph is followed by paragraph "9" in the decree, which is the principal paragraph here involved. In this paragraph the probate court lumped the provisions of paragraphs "I" and "J" of the will, and changed the language to some extent. It reads: "Said trust shall continue until the death of both said Frederic R. King, son of said deceased, and his wife, Edith Boswell King, and upon the death of the survivor of them, the said trust shall at once be at an end; and thereupon, and at once, the said trustee shall deliver [not "grant and deliver" as provided in the will] all the property so held by it in trust, then in its possession, unto the children, share and share alike, or their legal heirs by right of representation, [leaving out the parenthesis around this clause as they appear in the will] of the said Frederic R. King and his said wife, Edith Boswell King, and subject to the trusts hereinbefore provided, the said children of the said Frederic R. King and the said Edith Boswell King are the owners and entitled to the possession of all the estate of said deceased, upon the termination of said trust." It will be noted that the provisions following the word "representation" above are markedly different from the provisions of paragraph "J" of the will.

The present controversy centers upon the proper interpretation of paragraph "9" of the decree purporting to give effect to paragraphs "I" and "J" of the will. The appellants, the two surviving sons of Frederic and Edith, contend that the will and decree must be interpreted together; that both the will and the decree are susceptible of but one interpretation, namely, that the remainder in the residuary estate was to a class; that that class was the "children" or "their legal heirs by right of representation"; that in such event, where there is an alternative gift over, in order that any person within the class shall be entitled to distribution of a portion of the corpus, he must survive until the termination of the trust. Stated another way, appellants urge that the three sons of Frederic and Edith took contingent and not vested remainders, and that the remainders did not vest until the trust terminated. If these contentions are sound, since William N. King died before the termination of the trust, the entire corpus became vested in the two appellants upon such termination.

Respondent contends that, whatever the interpretation of the will may be, the 1909 decree gave to the then three living children of Frederic and Edith present vested interests in the

trust corpus, and that only possession of the trust estate was postponed until the termination of the trusts. If this interpretation be correct, the interest of William N. King became vested in him in 1909, and his survival until the trust terminated was not a condition precedent to such vesting. In this event such vested interest was subject to his testamentary control upon his death.

The trial court rendered an opinion which is properly a part of the record on appeal. (Rules on Appeal, rules 5(a) and 5(b).) The opinion states:

"The question presented to the Court is whether Margaret Webster King is entitled to one-third of the trust estate of Julia M. Norris under a decree of distribution made and entered on October 1st, 1909 . . .

"It is the opinion of this Court that the question in dispute in this matter was determined by the decree of distribution made as aforesaid, and that William Norris King, now deceased, inherited one-third of the trust property under the will of Julia M. Norris; that Margaret Webster King, as the surviving wife and executrix of the will of William Norris King, is entitled to his one-third interest of the trust property which became vested in him under the decree of distribution in the estate of Julia M. Norris.

"When a provision of a will is thought ambiguous or inconsistent the decree of distribution supersedes the will and prevails.

"Therefore, it is the judgment of this Court that Margaret Webster King is entitled to her one-third interest of the said trust estate for the reasons heretofore expressed."

This interpretation was reached without the aid of any extrinsic evidence on the issue of interpretation. By its so-called "Decision and Decree," which more properly should be designated as the trial court's findings and conclusions, the trial court found: "Said decree of final distribution conclusively adjudicated, decreed and established: —that, subject only to said trusts, the entire residuary estate of Julia M. Norris was at the time of its rendition, to wit, on October 1, 1909, presently vested in Boswell F. King, Thomas Starr King, and William Norris King, the three sons of Frederic R. King and Edith Boswell King, share and share alike; that each of said three named persons, Boswell F. King, Thomas Starr King, and William Norris King, was the then present owner of, and then had vested title to, one-third of the resid-

uary estate of Julia M. Norris, deceased, subject only to the trust; and that said three named persons, Boswell F. King, Thomas Starr King and William Norris King, were entitled to the possession thereof upon the termination of the trust."

In interpreting the "after-born" clause of the decree the trial court held: "Said decree of final distribution provided that any after-born children of Frederic R. King and Edith Boswell King should be entitled to share under the trust, that is, to share in the income of the trust estate, but said decree did not provide that any such after-born children had or should have any right, title or interest in the estate or any part thereof after the termination of the trust."

The court also found that "the provisions of said decree of final distribution are clear and unambiguous."

■ Before directly discussing the issue as to the proper interpretation that should be given the decree the exact scope of the review on these appeals must be determined. Contrary to the contention of respondent, inasmuch as no extrinsic evidence was introduced on this issue, the question of the proper interpretation of the decree is a question of law and not of fact. Whatever confusion might have existed in the law on this subject prior to 1942 was set at rest by the decision in *Estate of Platt*, 21 Cal.2d 343 [131 P.2d 825]. Since the decision of that case it is settled law that the interpretation of a document, including a will or a decree, is a question of law, and that it is the duty of an appellate court in such cases to interpret the document independent of the construction given to it by the trier of the fact, and to make a final determination in accordance with the applicable principles of law. (See *Moore* v. *Wood*, 26 Cal.2d 621 [160 P.2d 772] ; *Western Coal & Mining Co.* v. *Jones*, 27 Cal.2d 819 [167 P.2d 719, 164 A.L.R. 685] ; *Moffatt* v. *Tight*, 44 Cal.App.2d 643 [112 P.2d 910] ; *Southern Pac. Co.* v. *Hyman-Michaels Co.*, 63 Cal.App.2d 757 [147 P.2d 692] ; *Lane-Wells Co.* v. *Schlumberger etc. Corp.*, 65 Cal.App.2d 180 [150 P.2d 251] ; *Thompson* v. *Levereau*, 66 Cal.App.2d 795 [153 P.2d 206] ; *Estate of O'Brien*, 74 Cal.App.2d 405 [168 P.2d 432] ; *La Lumia* v. *Northern Cal. Packing Co.*, 75 Cal.App.2d 917 [172 P.2d 94].)

■ The appellants urge that the decree is ambiguous and that, in such event, especially where as here the will has been incorporated in the decree, the will may be resorted to in interpreting the decree. (*Buttram* v. *Finley*, 37 Cal.App.2d 459 [99 P.2d 1093] ; *Horton* v. *Winbigler*, 175 Cal. 149 [165 P.

423] ; *Estate of Lockhart,* 21 Cal.App.2d 574 [69 P.2d 1001].)
Respondent urges that the distributive provisions of the decree
are alone before us, and she maintains that the decree is con-
clusive as to the interpretation of the will and the rights of
beneficiaries thereunder. (*Cook* v. *Cook,* 17 Cal.2d 639 [111
P.2d 322]; *Estate of White,* 69 Cal.App.2d 749 [160 P.2d
204]; *Society of Cal. Pioneers* v. *McElroy,* 63 Cal.App.2d
332 [146 P.2d 962]; Prob. Code, § 1021.) Respondent like-
wise points out that, although the provisions of the will are
incorporated in the decree, they are incorporated only in the
recitals of the decree and not in the operative or distributive
portions of the decree, and contends that, in such event, in
interpreting the decree, resort may not be had to the provi-
sions of the will. We think that it is clear that, if the dis-
tributive portions of the decree are free from ambiguity, in
order to create an ambiguity, resort may not be had to the
provisions of the will, even though incorporated in the recitals
of the decree. ■ If, however, the distributive portions of
the decree are ambiguous, then resort may be had to the will
in interpreting that ambiguity, but even in that event if it
be found that the distributive provisions of the decree are
inconsistent with the will and cannot be reconciled, then the
distributive portions of the decree must prevail.

In the present case the trial court found the distributive
portions of the decree "are clear and unambiguous." While
in some respects the provisions of paragraph "9" of the
decree are not as clear as might be desired, we think that that
paragraph unmistakenly indicates that it was the intent of
the probate court in 1909 to provide for vested remainders
with possession deferred until the termination of the trusts.
We think this interpretation, for reasons hereafter mentioned,
is compelled whether or not the provisions of the will be
considered.

Appellants and respondent have filed exhaustive briefs.
which, for the most part, are compilations of authorities on
constructional rules and preferences, all of which, on both
sides, are valid. The weight to be given to such rules, however,
depends upon the facts of each case and varies according to
the circumstances. If the decree is fairly clear without re-
sort to rules of constructional preference then, of course, such
rules need not be considered. Many times these rules of con-
struction are resorted to as a form of rationalization, that is,
to justify a construction already made.

In their briefs appellants place considerable reliance on the "after-born" clause of the decree, urging that such a clause is some indication that the probate court intended the remainders to be contingent, apparently on the theory that if a class can open up the remainder is contingent. At the oral argument appellants' counsel stated that he placed but little reliance on this argument, and merely referred to the "after-born" clause to show that the testatrix was "class conscious."

■ The law is well settled that vested remainders can be created in a class the membership of which is not complete at the effective date of the grant or devise, so that similar vested interests accrue to those who, by later entry therein, fall within the class. Thus, in the present case, even if the "after-born" clause referred to the remainders as well as to the trust (the trial court found it referred only to the trust), that factor would not indicate that the remainders were contingent. In such a case the remainders could well be vested in the three children of Frederic and Edith, and, had there been any later entrants into the class (there were not), their interests would have vested as they were born, and by virtue of the consequent increase in the class membership, the vested interests of the preceding members would have been proportionately diminished. ■ It is well settled that the fact that the interests of existing members of the class may be thus diminished does not convert the interest of such members to contingent remainders. In such event the remainders are vested subject to a condition subsequent. This is the rule of the Restatement. In 2 Restatement of the Law of Property, section 157, it is provided that: "A remainder can be (a) indefeasibly vested; or (b) vested subject to open. . . ." As an illustration of clause (b) the Restatement states: "A, owning Blackacre in fee simple absolute, transfers Blackacre 'to B for life, remainder to the children of B.' B has a child C. C has a remainder vested subject to open and let in other children born to B."

Supported by the citation of many authorities, the rule is stated as follows in Gray, The Rule Against Perpetuities (4th ed.), section 110(1), page 97: "Sometimes a remainder is given to a class of persons, e. g. to children, the number of members in which may be increased between the time of creating the remainder and the termination of the particular estate; for instance, on a devise to A for life, remainder to

the children of A and their heirs as tenants in common. Here, although it is certain that each child born, or its heirs, will have a share in the estate, that share will be diminished by the birth of every other child of A. Each child, nevertheless, on its birth is said to have a vested remainder. The remainder is said to 'open' and let in the after-born children.'' (See, also, 2 Jarman on Wills, p. 168; 2 Underhill on the Law of Wills, § 558, p. 731; 2 Tiffany on Real Property (3d ed.), § 381, p. 141.)

For these reasons it must be held that the so-called ''after-born'' clause in no way assists appellants' argument that the remainders are contingent. This being so, and there having been no after-born children, we do not find it necessary to determine whether the trial court's interpretation of the ''after-born'' clause was correct or not. If correct, then it did not apply to the remainder interests; if incorrect it did apply to the remainder interests, but even then would not indicate that such remainders were contingent.

■ The main contention of appellants is that paragraph ''9'' of the decree, particularly when read with paragraphs ''I'' and ''J'' of the will, created life interests with a gift in remainder in the alternative form—i. e., to the children of Frederic and Edith '' 'or' their legal heirs by right of representation''—and it is urged that the alternative form of the gift over demonstrates that the right of the children is contingent and conditional upon their surviving to the time of taking, failing which the property passes to the surviving donees. There can be no doubt that, if appellants have properly intrepreted clause ''9'' of the decree as creating gifts in remainder in the alternative form, then there is a constructional rule to the effect that, other things being equal, the form of such gift is some indication that the gift was intended to be contingent.

This rule of construction is stated as follows in section 252 of 3 Restatement of the Law of Property:

''In a limitation purporting to create a remainder or an executory interest, in 'B or his children,' or in 'B or his issue,' or in 'B or his descendants,' or by other language of similar import, the alternative form tends to establish as to the interest of B that

'' (a) a requirement of survival to the end of all preceding interests exists; and

"(b) such survival is a condition precedent of such interest."

The reason behind this rule of construction is clear. The use of the disjunctive "or" tends to show that at the termination of the life estate a choice is to be made between alternative takers, and therefore survivability until the termination of the life estate is a condition precedent to the vesting of the remainder interests. Appellants list over twenty cases in their briefs where the words "or their heirs," or similar words, were held to be words importing an alternative gift, and where the remainders involved were held to be contingent upon survivability. (See, also, *Estate of Blake,* 157 Cal. 448 [108 P. 287].)

Appellants also place reliance on the rule of construction to the effect that, other things being equal, a construction of a will or decree under which the property involved goes to those of the blood of the testator is to be preferred to a construction that will permit the property to go to strangers in blood. This rule of construction has been relied on in California. (*Estate of Wilson,* 65 Cal.App. 680 [225 P. 283]; *Estate of Hartson,* 218 Cal. 536 [24 P.2d 171]; *Estate of Clark,* 64 Cal.App.2d 636 [149 P.2d 465].)

Respondent likewise relies on several well settled constructional preferences. The real question involved is whether the decree, internally, contains provisions which indicate that the constructional rules cited by appellants should not be applied, and that the rules cited by respondent should apply.

Respondent points out that the Restatement recognizes that section 252 merely states a rule of construction that is by no means absolute and controlling in all cases, and contends, of course, the rule there stated is not applicable here. Respondent quotes subsection "c" of the discussion following section 252 as follows: "Sometimes a limitation of a remainder or an executory interest is worded 'to B or his heirs,' or 'to B or his representatives.' Any such limitation constitutes 'language of similar import' under the rule stated in this Section, but the strength of the constructional preference here stated is lessened by the fact that such language is also susceptible of being construed to describe the completeness of the disposition in favor of the first taker (B) rather than as limiting alternative interests." Respondent points out that at most the decree here could be interpreted

as giving the remainders to "the children . . . or their legal heirs by right of representation" and does not provide that such remainders shall go to "B or his children," "B or his issue" or to "B or his descendants" (the language used in § 252) and contends that, at most, the language here used brings it within the weakest application of section 252. Respondent cites over 40 cases where it was held under the facts there involved that the words "or heirs" or similar language appearing in a will or decree did not compel an interpretation that the remainders there involved were contingent—all being held vested. The cases on both sides of this controversy are of but little help for the reason that none of them involves the exact language and the same context here involved.

One of the main arguments of respondent is that, properly interpreted, no alternative provision here appears in relation to the remainders, and that the alternative provision merely refers to possession of the property. To understand this contention paragraph "9" of the decree should be again quoted in part. It provides that the trust should continue until the death of the survivor of Frederic and Edith and then should be at an end. It is then provided that "thereupon, and at once, the said trustee shall *deliver* all the property so held by it in trust, then in its possession, unto the children, share and share alike, or their legal heirs by right of representation . . ." As to this portion of the quoted paragraph respondent urges it relates only to possession of the trust property and does not relate to the title to that property. It is pointed out that the words "grant and deliver" in paragraph "J" of the will became "deliver" in paragraph "9" of the decree. It is urged that this was done to avoid the then existing rule of the *Estate of Fair*, 132 Cal. 523 [60 P. 442, 64 P. 1000, 84 Am.St.Rep. 70], to the effect that a trust to convey was void. This, says respondent, amounted to an interpretation of the will by the decree and the decree must prevail. This interpretation is fortified by the next portion of the decree which respondent says relates to the title. That next portion of the decree following the above quoted portion reads "and subject to the trusts hereinbefore provided, *the said* children of the said Frederic R. King and the said Edith Boswell King *are the owners* and entitled to the possession of all the estate of said deceased, upon the termination of said trust."

Inasmuch as the then three living children of Frederic and Edith were referred to by name in both the will and the decree (paragraph "D" of the will—paragraph "2" of the decree), and, inasmuch as they were thereafter referred to in several places as "said children" or "above named children" in both the will and decree, respondent argues that the words "said children" in paragraph "9" refer to the three living children and do not refer to "children . . . or their legal heirs by right of representation" which appear in the earlier portions of paragraph "9." While the words "said children" may be ambiguous, the use of the words "are the owners," thus indicating that present interests were created, fortifies this construction. If only the last quoted portion of paragraph "9" were before us for interpretation, it would be the most obvious and reasonable interpretation. In that event the decree would obviously create vested remainders in the then three children of Frederic and Edith, with, at most, a possibility of the class opening up for after-borns. Under this interpretation the probate court in 1909 made a clear distinction between those who were to receive possession of the trust property and those who were to receive title. This somewhat awkward arrangement was set forth in the decree, says respondent, to avoid the rule of the *Estate of Fair, supra.* Respondent also argues that even the will contained no alternative provision in relation to the title. Paragraph "J" of the will, it will be remembered, provided that the trustee should "grant and deliver" the trust property to the "children, (share and share alike, or their legal heirs by right of representation)" and then provided: "I hereby, subject to the trust aforesaid, give, devise, and bequeath all said last named property to the persons last aforesaid in manner aforesaid." Respondent urges that "the persons last aforesaid" are the three living children of Frederic and Edith, and not the "children . . . or their legal heirs by right of representation." This is a strained construction of the will, but it cannot be doubted that the probate court used entirely different language in the decree, and if the two conflict that the decree must prevail. It likewise cannot be doubted that a possible and reasonable construction of paragraph "9" of the decree is that it made a distinction between possession and title and, as to the latter, referred only to the three living children and not to the "children . . . or their legal heirs by right of representation."

This interpretation is not the sole basis of respondent's claim that the remainders are here vested and not contingent. She sets forth a large number of constructional rules that support her contention that the remainders were vested in 1909. Thus she argues that the law favors the early vesting of remainder interests, and favors a construction which will create vested rather than contingent remainders, citing such cases as *Estate of Ritzman*, 186 Cal. 567 [199 P. 783], and *Estate of Riemer*, 69 Cal.App.2d 634 [159 P.2d 677]. Respondent makes a most forceful argument to the effect that where language of "present gift" is used such use of the present tense indicates a purpose to create a presently vested interest. Both the will and the decree use the present tense. Paragraph "J" of the will contains the language, referring to the remainders, "I hereby give, devise and bequeath." Paragraph "9" of the decree is even more positive. It states that "subject to the trusts hereinbefore provided, the said children of the said Frederic R. King and the said Edith Boswell King *are the owners*" of the trust property. The words "are the owners" are most positive. In section 257 of 3 Restatement of the Law of Property the rule is stated as follows: "In a limitation purporting to create a remainder or an executory interest, which is ambiguous as to whether such interest is, or is not subject to a condition precedent of survival, language of present gift to the intended taker tends to establish the absence of a condition precedent of survival as to the interest of such taker."

In comment (a) thereto it is stated: "Language of present gift is inconsistent with a postponement of the determination of whether the intended taker is to receive the thing given, although it is consistent with the postponement of the receipt, by such taker, of the thing itself. Hence such language tends to prevent the finding of a condition precedent of survival."

In *In re De Vries*, 17 Cal.App. 184 [119 P. 109], *Miller* v. *Oliver*, 54 Cal.App. 495 [202 P. 168], and *Estate of Riemer*, 69 Cal.App.2d 634 [159 P.2d 677], the California courts applied this rule of construction to the wills or decrees there involved.

Appellants cite *Estate of Blake*, 157 Cal. 448 [108 P. 287], as their strongest local authority for the rule that the presence of the alternative gift over (assuming such a gift over

exists as to the remainders) makes survival a condition precedent to the vesting of the remainders, but it should be noted that the will there did not contain words of present gift but expressed futurity in creating the interest in question.

Various other rules of construction are referred to by the parties. Enough has been said to indicate that there are rules of construction that would support a construction either way. Respondent has suggested an interpretation of paragraph ''9'' that, without the support of any rules of construction, reaches the conclusion that the remainders are vested. She supports this interpretation by several rules of construction. The interpretation suggested is not only a possible one, but is a reasonable one. Appellants, by the use of several rules of construction, suggest an interpretation that is certainly a possible and perhaps a reasonable one. In addition, the will and decree contain internal evidence that indicates that the testatrix had no intent to exclude those not of her blood. The generous provisions for her daughter-in-law, far in excess of the provisions made for her own son, show this to be true. Moreover, in many of the provisions of the decree the probate court followed carefully and almost verbatim the words of the will, but when it came time to apply paragraphs ''I,'' and ''J'' of the will, the court, in paragraph ''9,'' for reasons not entirely clear, elected to change the language materially. Whether this was done because of a fear that otherwise the trust provisions might be void under the rule of *Estate of Fair*, 132 Cal. 523 [60 P. 442, 64 P. 1000, 84 Am.St. Rep. 70], we have no way of knowing, but the fact remains that in drafting the decree the court made a clear distinction between possession of and title to the trust property. Under these circumstances, it is our conclusion that when it has been determined that even if there is a gift to a class that the opening of that group to include after-borns does not present an obstacle to the vesting of the estate, when the differences between the language of the will and the dcree are considered, when the intent of the testatrix to benefit her daughter-in-law, a stranger in blood, is taken into account, when the policy in favor of vested as distinguished from contingent remainders is weighed, and when the use of the present tense, particularly in the 1909 decree in creating the remainders is considered, the weight of the probabilities is that the testatrix and the probate court intended to create vested

and not contingent remainders, and we so interpret the decree and the will.

This conclusion makes it unnecessary to discuss the other points raised by counsel.

The portions of the order appealed from are affirmed.

Ward, J., and Schottky, J. pro tem., concurred.

A petition for a rehearing was denied March 21, 1947, and appellants' petition for a hearing by the Supreme Court was denied April 17, 1947. Schauer, J., voted for a hearing.