[Civ. No. 22557.   Second Dist., Div. One.   Oct. 22, 1957.]

Estate of JENNIE A. THOMAS, Deceased.   WAYNE SANBORN WHEELOCK et al., Appellants, v. FRANK O. WHEELOCK, as Executor, et al., Respondents.

Boyle, Bissell & Atwill for Appellants.

Bailey & McWhinney for Respondents.

DORAN, J.—From an agreed Statement of Facts upon which the case was submitted to the trial court, it appears that Jennie A. Thomas, died testate in Los Angeles on May 17, 1955. On July 1, 1955, the superior court "made its order admitting her last will and testament to probate, which will consisted of six (6) holographic writings dated respectively, June 30th, 1936, March 3d, 1947, May 16th, 1947, and undated and unsigned writing which is a part of the writing dated May 16th, 1947, October 16th, 1947, and January 5th, 1948. Decedent's only sister, LAURA VOGT, predeceased her, having died on April 2d, 1953. Decedent's only heir at law is a first cousin on the paternal side, namely: AMY ELIZABETH THOMAS LATHROP, one of the claimants herein. She is also survived by MRS. GEORGE GRAY, a stranger, ERMA BAKER, a

first cousin once removed, and by the following named first cousins twice removed: WAYNE SANBORN WHEELOCK, . . . and MURIEL OLDER HORSTMAN and GLENN E. OLDER, . . . . MRS. GEORGE GRAY and ERMA BAKER are the persons named to receive specific bequests in Article THIRD of the holographic writing of June 30th, 1936. WAYNE SANBORN WHEELOCK, MURIEL OLDER HORSTMAN and GLENN E. OLDER are the survivors of the four children named to receive the residuary estate in the last paragraph of Article THIRD of the holographic writing of June 30th, 1936. LIZZIE WEBB, a stranger, also named to receive a specific bequest in Article THIRD of said holographic writing, predeceased decedent, having died April 27th, 1944.''

The agreed statement also recites that ''All of the other claimants . . . are first cousins once removed and are not heirs at law pursuant to Section 226 of the Probate Code. The decedent had never married and left no husband, issue, parents, brothers or sisters, uncles or aunts surviving. Her predeceased sister, LAURA VOGT, left no issue surviving.

''The sole question to be decided is whether or not the residuary provisions of Article THIRD of the holographic writing of June 30th, 1936 prevail and are effective and to what extent the decedent died intestate.''

The last holographic testamentary document, held effective by the trial court, reads as follows:

''Will of Jennie A. Thomas                    Jan. 5, 1948.

''I, Jennie A. Thomas, being of sound mind and without duress, do hereby will and bequest at my death all my property both personal and real to my sister, Laura H. Vogt, for her to have and hold to do whatsoever she may see fit with it.

''I hereby appoint Laura H. Vogt administrator of my estate to act without bond. I hereby disinherit all other persons claiming any interest in my estate whether blood relation or not.

                              Jennie A. Thomas
                              1547 W. 48th Street
                              Los Angeles, California''

The trial court found ''That the will dated January 5, 1948, is a complete, separate and substantive Will and purports to and is effective to and actually does dispose of all of the property and estate of the decedent, and as such wholly supersedes and revokes said prior Wills dated June 30, 1936, March 3, 1947, May 16, 1947, and October 16, 1947.''

It was further found "That it was the intention of said decedent, in the execution of said Wills . . . to make and publish her last will and testament and to dispose of all of her property and estate and to supersede and revoke any and all prior Wills, including said Will and testament dated June 30, 1936; that LAURA T. VOGT, the sole beneficiary under the terms of the only effective Will of the decedent herein died during the lifetime of JENNIE A. THOMAS, the decedent herein, and left no lineal descendants; that the decedent herein, therefore, died without disposing of any part of her estate by Will, and that the entire estate of decedent is succeeded to by intestacy by AMY ELIZABETH THOMAS LATHROP, an adult first cousin."

It is appellants' contention "That the order of July 1, 1955, admitting to probate the six holographic writings as the last will of decedent, has become final and is conclusive against any later attempt to invalidate part of the last will upon claim of cancellation or revocation and that therefore the holographic writing dated June 30, 1936, is effective to dispose of the estate . . . to the persons therein named and who survived decedent, unless its provisions are wholly irreconcilable with and repugnant to the provisions of the holographic writings later in date."

It is further argued "That the six holographic writings of the decedent are to be taken and construed together as one instrument, and all six should receive an interpretation which will give to every expression some effect rather than one which will render any one of the expressions inoperative. Where possible an interpretation which will prevent total intestacy is to be preferred. . . . There is nothing in the later holographic writings inconsistent with the writing of June 30, 1936."

Answering these contentions, the respondent cousin, Amy Elizabeth Thomas Lathrop, maintains that "The order admitting the writing to probate was not res adjudicata of their construction." The only effect of this order was, in the language of respondent's brief, "to place before the Court all of the prior writings for construction at the proper time along with the last will dated January 5, 1948. The court did not by its order, purport to determine what, if any, legacies in the earlier writings were superseded and thereby revoked by the later will."

The judgment of the trial court must be sustained. ■ As pointed out in the respondent's brief, the fallacy in appellants'

618

argument rests upon a failure to distinguish between the mere admission of the holographic writings to probate, and the subsequent interpretation and construction of such writings. With this distinction in mind, it is clear that the order of July 1, 1955, admitting to probate the six writings left by testatrix, but not purporting to make any determination as to the effect of such writings made at different times over a 12-year period, cannot be deemed res adjudicata.

As said in *Estate of Broderson*, 102 Cal.App.2d 896, 904 [229 P.2d 38], "It is not the function of the trial court to construe a will in the proceeding brought for the admission of the will to probate. . . . If the second will expressly revokes the first or if it disposes of all of the testator's property, the first must be held to be revoked and should be denied probate. But here the court could not determine from a reading of the second will whether the first will had been revoked." An analogous situation is presented in the instant litigation save that the matter is here further complicated by the fact that there are six writings involved.

Further quoting from the *Estate of Broderson*, just cited, "It was not incumbent upon the court to determine at that time what parts of the first will had been revoked and admit the rest to probate. The only thing it could do was to admit to probate the entire document (as it did) for interpretation in connection with the last will at the proper time. The law is clear that in such a case as this, where a complete revocation does not appear on the face of the second instrument, the order admitting both of the instruments to probate does not affect the power of the court to determine the true intention of the testator from the two instruments at a later stage in the proceedings."

The rule stated in the Broderson Estate is reaffirmed in *Estate of Salmonski*, 38 Cal.2d 199, 208 [238 P.2d 966], where two documents were admitted to probate, one as decedent's will, and the other as a codicil. In the Salmonski case, the reviewing court says, "questions of construction and interpretation in measure of the effect of the two documents one on the other were 'appropriate matters for consideration and determination' in the instant heirship proceeding in resolving opposing claims for distribution of the estate. . . . It was not incumbent then (when admitted to probate) on the probate court to determine what bequests in the will were superseded by the codicil . . . ."

■ Appellants' contention that the six holographic writings must be taken and construed together as one instrument is untenable. There is no rule of law which requires this to be done, and for the reasons hereinbefore, the facts of the instant case do not indicate that such integration would result in an expression of the decedent's intention. The court possesses no authority to rewrite the six documents as one will, to rearrange their order, or to attempt to accomplish something which the testatrix did not see fit to do.

■ While it is doubtless true that, as an abstract rule, the law favors an interpretation that will avoid intestacy, nevertheless, as stated in the respondent's brief, "If a testatrix uses language which results in intestacy, and there is no doubt about the meaning of the language which was used, the court must hold that intestacy was intended, since the testatrix has the right to make a will which does not dispose of all of her property by leaving a residue to pass to her heirs under the laws of succession." Such is the holding in *Estate of Beldon*, 11 Cal.2d 108, 112 [77 P.2d 1052], where the court says, "But a will is never open to construction merely because it does not dispose of all of the testator's property."

The respondent's brief calls attention to the fact that "On four separate occasions, that is, in all of the writings subsequent to the first one, testatrix gave all of her estate to her sister alone and omitted any reference to any alternate disposition. In three of the last four writings, including her 'Last Will' of January 5, 1948, she expressly stated that she wanted no one other than her sister to have any interest in her estate. . . . Decedent intentionally failed to provide for anyone else, in the event of the predecease of her sister, Laura H. Vogt. This she had a right to do. Thus her estate will go to her heir-at-law, her first cousin, respondent Amy Elizabeth Thomas Lathrop, rather than to her more remote relatives (first cousins twice removed) and the strangers named in the superseded alternate provisions of her superseded will of June 30, 1936."

The trial court properly considered the effect and interpretation of the six holographic writings which had been previously admitted to probate. No reversible error has been pointed out in respect to the decision rendered.

The judgment is affirmed.

White, P. J., and Fourt, J., concurred.