[Civ. No. 154. Fourth Appellate District.—July 14, 1930.]

In the Matter of the Estate of EDWARD JOHNSON, Deceased. JULIA BERG et al., Appellants, v. CHARLES ERICKSON et al., Respondents.

W. J. Mossholder for Appellants.

Hamilton, Lindley & Higgins and E. W. Peterson for Respondents.

BARNARD, J.—Edward Johnson died testate in the county of San Diego on October 30, 1927. In due course a petition for partial distribution was filed, in which it was alleged that certain real property situated in San Diego, which had been the home of the deceased in his lifetime, was devised to Mrs. Julia Berg and Helga Helgesen, and praying that said real property be distributed to them. The only question presented is as to the construction that should be placed upon one paragraph of the will of the deceased, which paragraph reads as follows:

"Fifth, Whatever household goods or furniture I may possess I wish to be divided between Mrs. Julia Burg and Helga Helgesen and My present Residence in the City of San Diego California Kept as a Missionare Home."

At the hearing in the trial court it was contended on behalf of Mrs. Julia Berg and Helga Helgesen that this paragraph of the will is ambiguous and uncertain, and that when properly explained, with the aid of oral testimony as to the surrounding circumstances, it must be interpreted as giving to them, share and share alike, the real property previously occupied by the decedent as a residence. On the other hand, it was contended that the intention of the testator was to have said real property kept as a Missionary Home, and that, owing to the invalidity of this provision the testator died intestate as to that particular property. The trial court adopted the latter construction, and entered an order denying the petition to have said real property distributed to the said Julia Berg and Helga Helgesen. This appeal was taken from that order.

Appellants contend that said order is contrary to the law and the facts, and that the evidence introduced at the hearing was sufficient to establish the fact that the decedent intended by said fifth paragraph of his will, to give the real property in question to them. This contention is based upon the wording of the will itself, with the argument that the word "here-

tofore'' should be considered as inserted before the word "kept," and that the words "kept as a Missionare Home" were intended as an additional description of what real property the testator had in mind; and upon such evidence as was introduced as to the surrounding circumstances. They include under this head the oral testimony of two friends of the deceased, who testified, in effect, that they asked the deceased about a week before his death if he would not leave his home, when he passed away, to the Swedish Mission church. And that he replied "No," saying that he wanted his home to go to his sister, Julia Berg, and his niece, Helga Helgesen, for their home; that he had already arranged so that his home would go to them at his death; and that his sister had lived with him as his housekeeper for several years after the death of his wife, had taken care of him, and he wanted his home to go to her and his niece. Aside from the above, the only evidence as to surrounding circumstances shown by the record, is that the testator had for many years been a minister, doing work in the Swedish churches, especially missionary work; that he had resided on the real property in question for many years; that people interested in this religious work came to the house and meetings were often held there, especially prayer meetings, and it was considered as a kind of a missionary headquarters; and that his home was known and generally recognized as headquarters for meetings concerning the work of the Swedish church in the city of San Diego.

The words of a will are to be taken in the ordinary and usual sense, unless a clear intention to use them in a different sense can be collected, and the other sense in which they are used can then be ascertained. (Civ. Code, sec. 1324.) Section 1326 of the Civil Code provides that of two modes of interpreting a will, that is to be preferred which will prevent a total intestacy. The same principle would apply to a portion of a will which involves a partial intestacy. But this rule must not be allowed to influence the court in arriving at its interpretation of the language used in a will. (*Estate of Spreckels*, 162 Cal. 559 [123 Pac. 371, 374].) In that case, the court said:

" . . . The rules of construction to be applied in cases of this character are well settled in this court. The primary purpose of all such rules is to ascertain the testator's inten-

tion (Civ. Code, sec. 1317)—not some undeclared purpose which may be imagined to have been in his mind, but the intention disclosed by the words he has used. (*Estate of Young,* 123 Cal. 337, 344 [55 Pac. 1011].) As an aid to the interpretation, resort may be had 'in cases of uncertainty to the circumstances under which the instrument was executed. (Civ. Code, sec. 1318; *Estate of Marti,* 132 Cal. 666 [61 Pac. 964, 64 Pac. 1071]; *Kauffman* v. *Gries,* 141 Cal. 295 [74 Pac. 846].) Where the intent is plain, the duty of the court is to declare that intent, without regard to the consequences. If the plan adopted by the testator for the disposition of his property cannot be given effect because it violates the rules of law, the court is not authorized to substitute for the illegal provision some other which it may suppose would have been adopted by him if he had known that the directions actually given could not be carried out. (*Estate of Young,* 123 Cal. 337 [55 Pac. 1011].) In other words, the court cannot, under the guise of construction, make a will for the testator in place of the one made. . . . ''

Section 1318 of the Civil Code reads as follows:

''In case of uncertainty arising upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, exclusive of his oral declarations.''

█ The rule is established in this state that evidence of oral declarations to aid in the interpretation of a will cannot be given except in cases of latent ambiguity, and even then, the oral declarations of a testator are not admissible to show his intent with respect to the provisions which are ambiguous. (*Estate of Watts,* 186 Cal. 102 [198 Pac. 1036], and cases there cited.)

█ · In the case before us, if it be assumed that there is uncertainty or ambiguity in the fifth paragraph of this will, the meaning of that provision must be determined from its actual wording, together with such evidence as we have as to the general circumstances. Such declarations of the testator as were testified to by the two friends, cannot be considered for the purpose of showing that the testator had a purpose in mind different from that expressed in the terms of the instrument. (*Estate of Spitzer,* 196 Cal. 301 [237 Pac. 739].) We think that the above-mentioned evidence as to a

conversation with the testator, as to what he wanted to do and had done in regard to his residence property, could not be received for the purpose of explaining what the testator meant by the language actually used in the will, and that the trial court properly disregarded it for any such purpose.

It is claimed this evidence was admissible for the purpose of showing the subject was in the mind of the testator at the time he wrote the will. But it abundantly appears on the face of the will that he had in mind both the real property in question and these relatives. If we assume that this paragraph of the will is uncertain, but disregard the oral testimony as to the testator's explanation of what he had done, the other evidence of the surrounding circumstances shown by the record, when taken in connection with the language actually used, fails to show that the court was in error in its construction of that paragraph. The evidence that the testator was deeply interested in that particular religious work, that his home had been a center for that work, and had been regarded as missionary headquarters, tends to support the theory that he intended to have the property kept for a missionary home, fully as much as it supports the theory that he was giving an added description of the property. It would appear to us to lend even stronger support to the former theory, than the latter. Appellants argue that to insert the word "heretofore" and make this provision read, "heretofore kept as a Missionare Home", would express the real intention of the testator. It can hardly be said from the evidence that the property had theretofore been kept as a missionary home, although it had been a general center or headquarters for that particular denomination in San Diego. It had not been "kept" as anything other than the home of the testator. It had not been a missionary home in any ordinary use of those words. To add the word "heretofore" as desired by appellants, would make that clause describe a previous use of the property which is contrary to the facts as shown by the evidence. We are therefore of the opinion that, even if the clause in question be considered as ambiguous, the trial court was fully justified in the interpretation it placed upon the language used.

On the other hand, we think the language used in the paragraph under consideration is not so uncertain or ambiguous as to require extrinsic evidence for its construction.

In the *Estate of Willson,* 171 Cal. 449 [153 Pac. 927, 930], the court said:

"The rule is well established that where the meaning of the will, on its face, taking the words in the ordinary sense, is entirely clear, and where no latent ambiguity is made to appear by extrinsic evidence, there can be no evidence of extrinsic circumstances to show that the testatrix intended or desired to do something not expressed in the will. Where, in such cases, taking the words of the will alone, the intent is clear, that intent must be followed, and proof that the testatrix desired some other results or that the circumstances were such that such desire might be inferred, is inadmissible."

In the *Estate of Ryan,* 191 Cal. 307 [216 Pac. 366, 367], the court said:

"It is well settled that where there is no ambiguity in the phrasing of a will, the court may not consider the surrounding circumstances to determine what the testator's intention was, but must find it in the express language he has used." (See, also, *Estate of Young,* 123 Cal. 337 [55 Pac. 1011]; *Estate of Blake,* 157 Cal. 448 [108 Pac. 287]; *Estate of Hoytema,* 180 Cal. 430 [181 Pac. 645, 646].)

█ It is earnestly urged that the evidence as to services rendered to the testator in his last years, by the sister, and his own statement to friends that he had arranged it so she and her daughter would receive the property at his death, are sufficient to show an intent on the part of the testator, to give the property to appellants. But, as the court said in *Estate of Hoytema, supra:*

"Only through speculation and conjecture may the construction contended for by appellants be confirmed. And this cannot be countenanced in view of the cardinal rule to the effect that in the interpretation of wills it is not the probable intent which may have existed in the mind of the testatrix which prevails, but only that which is expressed in the language of the will." (*Estate of Blake,* 157 Cal. 448 [108 Pac. 287].)

█ While the fifth paragraph of this will is inartistically expressed, it seems to rather definitely and clearly provide that the household goods and furniture shall be divided between the two persons named, and that the residence shall be kept as a missionary home. The fact that the latter pro-

vision is not legally sufficient to accomplish that purpose, as admitted by all parties to this controversy, is immaterial as to the particular question now before us. A certain purpose is expressed on the face of the instrument. If the word "heretofore" be inserted before the word "kept," in accordance with the theory of appellants, the meaning expressed on the face of the instrument is changed. It may be conceded that where it clearly appears on the face of a will that the testator's meaning is not completely expressed by the words used, and where it is also clear what words are omitted, that those words may be supplied in order to carry out the intention as collected from the context. (1 Jarman, 451; Redfield on Wills, 454.) But while words may be supplied to show the meaning that is intended, but not clearly expressed, they may not be supplied to change a meaning that has been expressed. We are of the opinion that the language here used cannot be so changed. It follows that the conclusion reached by the trial court must be sustained.

The order appealed from is affirmed.

Cary, P. J., and Ames, J., *pro tem.*, concurred.