[Civ. No. 14191.   Second Dist., Div. Two.   May 1, 1944.]

Estate of LEMUEL E. MOOREHOUSE, Deceased. DR. CECIL L. MOOREHOUSE et al., Appellants, v. STELLA ROBINSON et al., Respondents.

Kenneth Sperry for Appellants.

Denio, Hart, Taubman & Simpson for Respondents.

MOORE, P. J.—Cecil and Floyd Moorehouse, grandsons of deceased, petitioned the court below to ascertain and declare who are entitled to share in the distribution of the estate and the proportions of each. Following a hearing upon such petition and the answer thereto the court entered its decree making such determination. This appeal is from those portions of the decree which "deny the right of said petitioners to share equally" with their cousin Cleo in the residue of decedent's estate which remains after first deducting the costs of administration, a legacy of $1,000 and a specific devise to Stella Robinson. The latter is Cleo's mother who was awarded one-half of the residue in addition to the specific bequests.

The intent of the testator is expressed in four separate documents, namely: his will and three successive codicils. He published his will on the 19th day of April, 1933. At that time he had a living wife and two children: Stella Robinson and Ora J. Moorehouse. Appellants are the sons of Ora.

By his will he first directed his executors to pay the expenses of his last illness and burial and "all claims against my estate." He then bequeathed to his wife "all of the rest, residue and remainder of my estate." By paragraph Fourth he devised that in the event his wife should predecease him then "all of the rest, residue and remainder of my estate" shall be distributed as follows:

(a)   One-half to Stella Robinson; (b) $1,000 to Ora; (c)

"the remainder thereof" one-half to Cecil; the other half of such remainder to Floyd, then in parts unknown, provided the latter should return.

On the first of July, 1935, he executed his first codicil which declared the recent death of Ora. He revoked the bequest to his son and in lieu thereof made a special bequest to Stella to save her from the loss of a loan which she had made to Ora on the latter's note in the sum of $1,000. In a concluding clause he reaffirmed all the provisions of his "said Last Will and Testament."

On September 10, 1937, his wife having deceased, in a second codicil the testator reaffirmed his last will and his first codicil and that one-half of the remainder of his estate should go to Floyd (who had returned), as provided in Fourth (c) of his will. A third paragraph of this codicil declared that in the event Cecil or Floyd should owe him any money at the time of his death his executors should "adjust the same to the end that said notes be cancelled, and the amounts or property to be received by my two grandsons, as aforesaid, shall be equalized taking into consideration their obligations to me."

October 27, 1938, Mr. Moorehouse executed a third codicil in which he declared, first: the execution of his last will and testament and the two succeeding codicils. "Second: I do hereby desire to add a codicil to my Last Will and Testament aforesaid and other Codicils as follows:

"(a)  I give and devise unto my daughter, Stella Robinson, if she survives me, or in the event of her prior death then equally to her heirs by right of representation, my home property at 2373 Linden Avenue, Long Beach, California, together with the furniture, furnishings, dishes, silverware, pictures and other articles of furniture, my clothing and personal effects therein contained at the time of my death.

"(b)  I direct that my granddaughter, Cleo L. Tallman, who resides in Los Angeles, California, shall share equally with my two grandsons, Cecil L. Moorehouse and Floyd A. Moorehouse, in the residue of my said estate, and I do hereby give, devise and bequeath unto my said granddaughter, Cleo, a one-third of the residue of my estate, real, personal or mixed and wheresoever situated at the time of my death, with due regard to any indebtedness of my grandsons Cecil and Floyd, due me at the time of my death in order to equalize the shares to each of my grandchildren as herein set forth.

"In all other respects save as herein and in my other codicils modified, I do reaffirm and redeclare my Last Will and Testament."

The decree entered by the court named the parties to this proceeding as the legatees and devisees of the testator under the will and the three codicils and provided that said persons are entitled to succeed to the net remainder of the estate of decedent available for distribution after all claims, taxes and costs of administration and other charges are deducted and paid as follows: (a) Unto Stella Robinson, the home on lot 20 of tract 2463 in Long Beach and the furniture and furnishings therein, together with the rents, issues, and profits therefrom, less taxes, repairs and other costs of maintenance subsequent to the death of decedent. (b) One-half of the net remainder unto Stella after deducting claims, taxes, costs, charges and the bequest of the home place. (c) After deducting the devise and legacy to Stella as specified in (a) and (b) the decree awards to Stella $1,000 with interest at 6 per cent from the date of the note executed by Ora to Stella. "(d) The remainder of said net estate, after deducting the legacies and devises specified in subdivisions (a), (b) and (c) of paragraph 2 hereof, as aforesaid, shall be divided equally between Dr. Cecil L. Moorehouse, Floyd A. Moorehouse and Cleo L. Tallman Carter, taking into consideration the obligations of Dr. Cecil L. Moorehouse and Floyd A. Moorehouse to said estate to the end that the shares of the said Dr. Cecil L. Moorehouse, Floyd A. Moorehouse and Cleo L. Tallman Carter shall be equalized, including in said computation said notes, or any other obligations of the said Dr. Cecil L. Moorehouse and Floyd A. Moorehouse to said estate or said decedent, as aforesaid."

Appellants contend that the court's interpretation of the four testamentary documents is contrary to the plain intent as found therein. We find no substantial basis for this contention. The third codicil does not enlarge the shares of the estate to be awarded Cecil and Floyd. On the contrary, that codicil diminishes the percentage each should receive by virtue of the provision whereby Cleo is to share with them on equal terms in the remainder of the estate after payment of expenses of administration, distribution of Lot 20, and the payment of the legacies to Stella. Nothing contained in the last codicil indicates an intention to reduce the amount of property or of the money to be awarded Mrs. Robinson, but

on the contrary subparagraph (a) betrays a definite aim to "add" to her share by bequeathing to her the home at Long Beach. The evidence also reveals decedent's deep solicitude for his daughter in his act of conveying to her, shortly after executing the third codicil, another property in South Gate worth $2,500. Not a word appears in his valedictory codicil to indicate a cooling of the father's interest in or affection for his own daughter, but rather does an increase of zeal for her comfort appear in the series of testamentary instruments. At first he gave her only one-half of the residue. In codicil one he added to such one-half the $1,000 legacy to save her from loss on her loan to her brother. In ,codicil three he makes her the additional bequest of his home and its furnishings, followed by the gift of the South Gate property.

They contend also that the court's interpretation is wrong in that it is contrary to the established principles of human behavior. It is not abnormal for a father to prefer his only child as against his grandchildren. He may with propriety, if he choose, exclude his grandchildren altogether. Especially would such procedure be proper and justifiable where the testator's only child is a widowed daughter and he has reared and educated his grandchildren and advanced them moneys to become established in business and they are in robust health and self-supporting. Mrs. Robinson had herself reached an advanced age; had no earning power; was dependent upon her possessions for support. As long as it was his expressed desire that she should have specific bequests and one-half of the residue of the estate the court has no power to rewrite his will according to the wishes of those who are disappointed.

Appellants contend that by a fair construction subparagraph (b) of the third codicil was intended to bequeath to the three grandchildren in equal shares the "residue" of the estate after deducting the expenses of administration and the specific gifts for Stella because of the technical distinction of the word "residue" as used in that subparagraph. They argue that by the use of that word he impliedly revoked all special bequests made to her in the three preceding documents. There is no substantial difference between the words "remainder" and "residue." Residue is derived from the word *residuus* which means that which remains of an estate after all charges, debts, and bequests have been paid. It is defined to be "what remains after paying the legacies of

the will and the debts and expenses of administration." (*Mc-Dougald* v. *Low,* 164 Cal. 107, 110 [127 P. 1027].) Remainder is derived from *remanere* which means to be left over and in law means the residual interest of an estate remaining over after part has been taken away. The two words are commonly given as synonyms. (See 54 C.J. 715; Webster's International Dictionary; Oxford Dictionary.)

But in construing a will the aim is to ascertain the meaning of the testator rather than the meaning of the words used. All instruments constituting the testamentary disposition must be "construed together as one instrument." (Prob. Code, § 101.) Such interpretation must be given to the words of a will as will give to every expression some effect, rather than one which will render any of the expressions inoperative. (*Ibid.,* § 102.) All parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole; but where several parts are absolutely irreconcilable, the latter must prevail. (*Ibid.,* § 103.) A clear and distinct devise or bequest cannot be affected by any other words not equally clear and distinct. (*Ibid.,* § 104.) "The words of a will are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another sense can be collected, and that other can be ascertained . . . technical words in a will are to be taken in their technical sense, unless the context clearly indicates a contrary intention. . . ." (*Ibid.,* § 106.) A devise of the residue of real property or a bequest of the residue of the personal property passes all the real or personal property of the testator not "otherwise effectually devised or bequeathed by his will." (*Ibid.,* § 126.)

Subdivision (a) of the fourth paragraph of the original will distinctly devised to Stella Robinson one-half of the "residue" and "remainder" of the estate. There is no suggestion in either the first or second codicil that such half of the residue and remainder should go to another. The intention of the testator to bequeath one-half of the residue to his daughter is emphasized by his express declaration in the second paragraph of the third codicil in which he says, "I do hereby desire to *add* a codicil." By subdivision (a) thereof he devises the Linden Avenue home and its furnishings, silverware, clothing, and personal effects; and by the final clause reaffirms the Will in all other respects save as modified by the three codicils.

■ It is the established rule of construction that dispositions made by a will are not to be disturbed by a codicil further than is absolutely necessary in order to give that codicil effect, and a clear bequest is not revoked by a doubtful expression or by an inconsistent disposition in the codicil. (*Estate of Dominici,* 151 Cal. 181, 189 [90 P. 448]; *Estate of Norrish,* 135 Cal.App. 166 [26 P.2d 530].) ■ The court's function is to construe a will, not to make one; to ascertain the testator's intention as expressed, not some undeclared, imaginary purpose; and, if the language be ambiguous, to resort to the circumstances of the execution of the testamentary document. (*Estate of Johnson,* 107 Cal.App. 236, 239 [290 P. 314].) ■ The cardinal rule of construction requires that the intention of the testator be ascertained and that if lawful it be given effect (*Estate of Young,* 215 Cal. 127, 130 [8 P.2d 846]; *Estate of McCray,* 204 Cal. 399, 402 [268 P. 647]) even though the disposition of his estate be unequitable, unwise or capricious. He may transmit without regard to moral or natural claims upon his bounty. (*Estate of Lindsay,* 136 Misc. 555 [241 N.Y.S. 513, 517].) Neither is he bound to bequeath it in such a manner as to gain the approbation of his contemporaries, the wise or the good. (*Estate of Wayne,* 134 Ore. 464 [291 P. 356, 294 P. 590, 79 A.L.R. 1427].)

In view of such established rules, of a reasonable construction of the four documents, and of the final clause of the third codicil, we are reassured that the decision of the trial judge should be approved.

The order is affirmed.

Wood (W. J.), J., and McComb, J., concurred.

A petition for a rehearing was denied May 24, 1944, and appellants' petition for a hearing by the Supreme Court was denied June 29, 1944.