[Civ. No. 23606.   First Dist., Div. One.   Sept. 28, 1967.]

Estate of CLARA H. PAGE, Deceased. BANK OF AMERICA, Petitioner and Respondent, v. ELEANOR FAY RIDENOUR HODGE et al., Claimants and Respondents; HUGH GORDON SIVELL et al., Objectors and Appellants.

McCloskey, Wilson, Mosher & Martin, Theodore C. Carlstrom and Roger L. Mosher for Objectors and Appellants.

Richard M. Blois and Leon E. Shiells for Claimants and Respondents.

Wilson, Jones, Morton & Lynch and Norman Kavanaugh for Petitioner and Respondent.

SIMS, J.—John Page Sivell, Hugh Gordon Sivell, Verna Page Armstrong and Ernest Gamble Jr., who for convenience are designated as remaindermen, have appealed from an order entered in response to a testamentary trustee's petition for instructions (see Prob. Code, §§ 1120, 1240). The order directs the trustee to distribute at the testatrix's daughter's death that share of the trust estate held for her benefit, to Eleanor Ridenour Hodge and Nancy Ridenour Buchanan, referred to as the granddaughters.

The remaindermen contend that the trial court erred in finding that the decree of final distribution precluded the asser-

tion of their rights as set forth in the provisions of testatrix's will which are embodied in a prior decree of preliminary distribution. They assert that the clear language of the will, as incorporated in the decree creating the trust, directs that the estate in question be distributed to them. An examination of the record, in the light of established principles for construing wills and probate decrees, establishes the validity of these contentions and the order must be reversed.

Clara H. Page died testate on January 25, 1961 and her will was admitted to probate April 12, 1961. On October 31, 1962, by a second decree of preliminary distribution, the residue of the estate of the decedent, with the exception of approximately $5,000, which was reserved to cover all fees and taxes then remaining due, was distributed to trustees named in her will ''in trust, under the provisions of Paragraph Seventh of decedent's will, as'' thereafter set forth in *haec verba*. The provisions of the will, as incorporated in the decree, direct: ''Without necessarily making any physical segregation of the property, the trustees shall divide the trust estate into equal shares as follows: One share for my said daughter . . . [whose death has occasioned the present proceedings], and one share for each of her two children . . . [the granddaughters in these proceedings].'' The decree establishes three trusts and separately designated the specific property distributed to each.

The provisions of the will, as incorporated in the decree, provide for the payment of the income of the daughter's share to her, give the trustees the power to invade the corpus of her share for her benefit, and authorize the investment of funds of her share for the improvement of her home and other designated property. Specific remainders over are provided in the event of the death of either of the granddaughters before the share of either vests in her, but no express provision is made for disposition of the daughter's share in the event of her death after having survived the testatrix.

A general provision recites: ''Any of the trust estate not disposed of under the foregoing provisions shall go and be distributed to . . . [the remaindermen in these proceedings].''

The daughter died December 9, 1964, and on December 21, 1964 the surviving trustee filed a petition for instructions alleging that ''. . . certain clauses in the will as to the disposition of the one-third share of [the daughter] are ambiguous and unclear, and that it is necessary for this court to construe

the will . . . in order to determine whether the [granddaughters] or the remaindermen, . . . now succeed to the interest of [the] deceased [daughter].''

The contesting parties thereafter filed a stipulation of facts and the matter was extensively briefed and argued. The remaindermen rely upon the express provisions of the decree establishing the trust. The granddaughters not only rely on the subsequent decree of final distribution, but also contend that the provisions of the will, considered as a whole, demonstrate an intent that the remaindermen were only to acquire an interest in the estate of the testatrix in the event her daughter and granddaughters predeceased her without issue.

*The Effect of the Final Decree of Distribution*

On January 23, 1963 the executors filed their third account and report and petition for final distribution. The account and petition states: ''That on the 31st day of October 1962 the order settling the second account and petition for preliminary distribution was duly and regularly filed in this honorable Court. That pursuant to the order *by* [sic] which reference is made at this time, which is incorporated by reference at this point as though fully set out herein distribution of all but approximately Five Thousand ($5 000.00) Dollars was duly and regularly made. . . .

''That . . . there will remain on hand for distribution the sum of Three Thousand Four Hundred Forty-Two Dollars and Forty-Six Cents ($3,442.46).

''That pursuant to the last will and testament of the decedent herein this balance should be distributed as follows:

''One-third thereof to the BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION and GRETCHEN K. RIDENOUR, TRUSTEES, for the benefit of GRETCHEN K. RIDENOUR, one-third to the BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION and GRETCHEN K. RIDENOUR TRUSTEES for the benefit of NANCY PAGE RIDENOUR, one-sixth to the BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION and GRETCHEN K. RIDENOUR in trust for the benefit of ELEANOR FAY HODGE and by reason of her maturity one-sixth thereof to ELEANOR FAY HODGE outright.'' The prayer for distribution in the petition contained substantially the same language.

On February 5, 1963 the account was settled and a decree of final distribution was signed and filed. The court found that all the allegations of the petition—presumably including those which incorporated the prior order—were true. The

decree concludes: "That the balance remaining on hand in this estate, including the amount of Three Thousand Four Hundred Forty-Two and 46/100th Dollars ($3,442.46) and all other assets in the estate, whether described herein or not, are distributed to and in the following proportions: . . ." There follows language similar to that in the petition, with no direct or indirect reference to the will, to the provisions of the will, or to the remaindermen.

In the present proceedings the trial court found: "It is true that this Court has previously made its orders providing nothing to the niece and nephews of testatrix's pre-deceased spouse and these orders are now final; and that it is true that this Court's interpretation of decedent's will and its previous orders made herein are hereby confirmed in all respects as concerns the right of the granddaughters to distribution of the entire balance of decedent's estate and trust estate."

"It is a hornbook law that the decree of distribution, when it becomes final, is conclusive as to the rights of heirs, devisees, and legatees. (Prob. Code, § 1021.) It is conclusive even if erroneous and though the record itself shows that it is erroneous. (*Estate of Loring,* 29 Cal.2d 423, 432 [175 P.2d 524]; *Miller* v. *Pittman,* 180 Cal. 540, 543 [182 P. 50]; *O'Brien* v. *Nelson,* 164 Cal. 573, 575-576 [129 P. 985].) It is a final and conclusive determination of the rights of all parties under a testamentary trust including beneficiaries of the trust. (*Estate of Loring, supra,* 29 Cal.2d 423, 427 . . .; *Estate of Van Deusen,* 30 Cal.2d 285, 289-290 [182 P.2d 565].) And a testamentary trustee as a devisee and legatee is bound by the decree with respect to the existence, validity of, and rights under a testamentary trust and the incidental matters which necessarily are involved in a determination on those subjects. (*Wells Fargo Bank etc. Co.* v. *Superior Court,* 32 Cal.2d 1, 9 [193 P.2d 721].)'' (*Estate of Buckhantz* (1958) 159 Cal.App.2d 635, 642 [324 P.2d 317]; and in addition to the cases cited see: *Williams* v. *Marx* (1899) 124 Cal. 22, 24 [56 P. 603]; *Estate of Haney* (1959) 174 Cal.App.2d 1, 6 [344 P.2d 16]; and *Estate of Adams* (1958) 164 Cal.App.2d 698, 702 [331 P.2d 149].)

It does not follow that the fragmentary language of the final decree deprived the remaindermen of whatever interest they had under the will. Despite assertions to the contrary, they were definitely named in the preliminary decree of distribution entered October 31, 1962. This decree sets forth the names of the trustees, the property distributed to them and

recites: ''The uses and purposes for which the trust property shall be held are those set forth in Paragraph Seventh of the decedent's will which reads as follows:'' Paragraph Seventh is thereafter set out in *haec verba*. Reference to these provisions disclose the names of the beneficiaries, including the remaindermen, and the contingencies under which they take. Further provisions define the power of the trustees.

''The court may incorporate the provisions of the will in its decree, either in express terms or by reference thereto as was the case in *Goldtree* v. *Thompson*, 79 Cal. 613 [22 P. 50], where the decree distributed the property to the trustees to hold in the manner named and set forth in the will, 'and to which reference is hereby particularly made as a guide to the trustees in the discharge of their trust.' In such a case, the terms of the will become the language of the decree, but it is still the decree, and not the will by which the rights of the parties are determined.'' (*Goad* v. *Montgomery* (1898) 119 Cal. 552, 558 [51 P. 681, 63 Am.St.Rep. 145].)

There having been no appeal from that preliminary decree of distribution, it became final and controls the disposition of all the property distributed to the trustees under its terms. (*Stevens* v. *Torregano* (1961) 192 Cal.App.2d 105, 116 [13 Cal.Rptr. 604]; *Estate of O'Connor* (1958) 158 Cal. App.2d 187, 193 [322 P.2d 616]; *Estate of Weinreich* (1955) 131 Cal.App.2d 303, 305 [280 P.2d 499].)

The 1962 decree did not leave the names of the persons and the proportionate parts of the estate to which each was entitled undetermined. (See Prob. Code, § 1021; and cf. *Estate of Toler* (1957) 49 Cal.2d 460, 467-468 [319 P.2d 337].) Any subsequent proceedings involving the property which was the subject of that decree would have to be predicated upon the provisions it contained. There was no property left which the final decree could affect except the $5,000 and any possible after-acquired property.

It is absurd to construe the language of the final decree as setting up rights separate and independent of the provisions of the will which were incorporated in the preliminary decree. The shorthand of the final decree contains no indication of the terms and provisions upon which the trustees are to hold the property for the named beneficiaries, nor does it set forth any administrative provisions. If controlling, it would leave an intestacy upon the death of any beneficiary. The final decree can have meaning only if it is construed with the preliminary decree which established the trusts to which it refers. (See

*McCloud* v. *Hewlett* (1902) 135 Cal. 361, 367-368 [67 P. 333] ; and cf. *Wells Fargo Bank etc. Co.* v. *Superior Court* (1948) 32 Cal.2d 1, 8-9 [193 P.2d 721].) In fact, the granddaughters' contentions before this court are predicated upon the establishment of the terms of the trust as set forth in that earlier decree, as well as upon the terms of the entire will.

It is concluded that the trial court erred in finding that previous orders precluded the remaindermen from asserting such claims as they have under the provisions of the will, as incorporated in the decree of preliminary distribution.

Parenthetically, it is noted that pursuit of the principle of res judicata to its logical conclusion, as advocated by the granddaughters, may preclude them from relying on any provisions of the will, which are not incorporated in the preliminary decree to impeach the provisions of the decree. (See *Goad* v. *Montgomery, supra,* 119 Cal. 552, 557; and *Estate of Weinreich, supra,* 131 Cal.App.2d 303, 307, as discussed *infra*.) If the remainder clause is ineffective or limited because of matters which existed at the time the preliminary decree was entered, the attack should have been made at the hearing on that phase of the proceedings.

## Construction of the Terms of the Trust

The trial court found that the facts contained in the stipulation were true, and in addition, over the objection of the remaindermen, made the findings set forth in the margin.[1]

---

[1]"3. It is true that certain clauses in the will of Clara H. Page as to the disposition of the one-third share of Gretchen K. Ridenour upon her death are ambiguous when considered alone.

"4. It is true, after due consideration is given to the language used in the will, in its entirety, that it was the intention of the testatrix, Clara H. Page, that the niece and nephews of her pre-deceased spouse should inherit under her will only in the event her daughter and granddaughters predeceased her without issue; and it is true that this contingency never occurred.

"5. It is true, when all of the language used in the will is considered, that it was the intention of the testatrix, Clara H. Page, to leave her entire estate (with the exception of a specific bequest later renounced), to her daughter, two granddaughters, their issue, and only if none of them survived, to the niece and nephews herein.

"6. It is true that the niece and nephews of the predeceased husband of the testatrix take nothing under the terms of the will by reason of the fact that both granddaughters have survived the testatrix.

"7. It is true that the two granddaughters, Mrs. Eleanor Ridenour Hodge and Mrs. Nancy Ridenour Buchanan, are entitled to distribution of the residue of the daughter's share of the trust estate. . . .

"9. It is true that the niece and newphews of testatrix's predeceased husband, John Page Sivell, Hugh Gordon Sivell, Verna Page Armstrong, and Ernest Gamble, Jr., are contingent remaindermen under

The granddaughters claim that these are findings of ultimate fact. ██ They are, at best, mixed findings of fact and conclusions of law (see *Estate of Blake* (1910) 157 Cal. 448, 455-456 [108 P. 287] [overruled on other grounds *Estate of Stanford* (1957) 49 Cal.2d 120, 129 [315 P.2d 681]), and they do not preclude this court from exercising its independent judgment in construing the terms of the trust on the uncontradicted facts which have been made part of the record. (*Parsons* v. *Bristol Dev. Co.* (1965) 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839]; *Estate of Platt* (1942) 21 Cal.2d 343, 352 [131 P.2d 825].)

██ In determining who is entitled to the daughter's share, the trial court and this court should initially be limited to consideration of those provisions of the will which are incorporated in the decree of distribution. ''The judgment is the final determination of the rights of the parties to the proceeding, and upon its entry their rights are thereafter to be measured by the terms of the judgment, and not by the instrument. A will can no more be used as evidence to impeach the decree of distribution than can any other evidence upon which a judgment is rendered.'' (*Goad* v. *Montgomery, supra,* 119 Cal. 552, 557; accord: *Estate of Haney, supra,* 174 Cal.App.2d 1, 6; *Estate of Hubbard* (1954) 122 Cal.App.2d 942, 945-946 [266 P.2d 196]; and *Estate of Weinreich, supra,* 131 Cal.App.2d 303, 307.) If it then appears that the decree of distribution is uncertain or ambiguous, the will itself may be resorted to in order to resolve such ambiguity. (*Estate of Careaga* (1964) 61 Cal.2d 471, 476 [39 Cal.Rptr. 215, 393 P.2d 415]; *Fraser* v. *Carman-Ryles* (1937) 8 Cal.2d 143, 146 [64 P.2d 397] [overruled on other grounds *Estate of Platt, supra,* 21 Cal.2d 343, 349]; *Estate of Doyle* (1962) 202 Cal.App.2d 434, 444 [21 Cal.Rptr. 123].)

The provisions of the preliminary decree of distribution which created the trust have been summarized above. The decree recites: ''That there is distributed to the following persons the property described below:

''a. To [the trustees], in trust under the provisions of Paragraph Seventh of decedent's will, as hereafter set forth, the following described property:

---

decedent's will; and it is true that the contingency under which they might take has never occurred and cannot occur in the future.

''10. It is true that the words 'under the foregoing provisions' found in Paragraph Seventh A. (5) of the will of the testatrix, Clara H. Page, should be interpreted to mean that the persons named therein would take nothing if decedent's granddaughters, or either of them, or issue of either of them, survived the testatrix.''

"Trust 1—[the daughter's] part:

". . . [property specifically described].

"Trust 2—[one granddaughter's] part:

". . . [property specifically described.]

"Trust 3—[other granddaughter's] part:

". . . [property specifically described].

"The uses and purposes for which the trust property shall be held are those set forth in Paragraph Seventh of the decedent's will which reads as follows:

" 'SEVENTH: In the event my net probate estate remaining for distribution shall exceed the value of $25,000.00 [which was the fact] then I give, devise and bequeath the residue of my estate, real and personal, wheresoever situated, including all failed and lapsed gifts, hereinafter termed the trust estate, to [named trustees] in trust, to be held, administered and distributed in accordance with the following provisions:

" 'A—DISTRIBUTION OF INCOME AND PRINCIPAL

" '(1) Without necessarily making any physical segregation of the property, the trustees shall divide the trust estate into equal shares as follows: One share for my said daughter, . . . and one share for each of her two children. . . . If my daughter shall predecease me and her said two daughters survive me each shall have an equal share of the whole. If one only of my granddaughters shall survive me, leaving no issue, my daughter having predeceased me, my granddaughter surviving shall be entitled to the whole trust estate. The issue of a deceased grandchild of mine who has predeceased me shall be entitled to the parent's share by right of representation.''

Clause " '(2)' " provides for the distribution of income to the daughter and for accumulation of income for the granddaughters.[2] Clause " '(3)' " provides for distributing principal to each granddaughter, one-half at age 21, and the remainder at age 25, and for holding the share of the daughter during her lifetime.[3]

---

[2] " '(2) The net income from the share held for my daughter shall be distributed to her in convenient installments not less often than quarterly. The net income from the respective shares held for my granddaughters shall be accumulated and together with available cash assets invested principally in United States Government Bonds, or Government insured Savings Bank deposits.' "

[3] " '(3) Each share set aside for a living grandchild shall be distributed to her to the extent of one-half of the share if and when the child has attained the age of twenty-one years and the remainder of the share if and when the grandchild has attained the age of twenty-five years. Each share set aside for the issue of a deceased grandchild shall

Clause " '(4)' " provides for the contingency of the death of a grandchild.[4] There is no express provision concerning the devolution of the share of the daughter upon her death after having survived the testatrix. The trust next provides as follows:

" '(5)' " Any of the trust estate not disposed of under the foregoing provisions shall go and be distributed to the [remaindermen], share and share alike. If any of them shall have died leaving issue, the issue shall take the parent's share by right of representation. If any of them shall be deceased leaving no issue, the survivors of them shall take the same, but including by right of representation the then living lawful issue of any of them previously predeceased.' "

The remaining dispositive provisions of the trust provide for its ultimate termination (cl. " '(6)' "), for the invasion of the daughter's share of the corpus for her benefit, and for the use of up to $2,500 per year for the education of each granddaughter (cl. " '(7)' "), and for a spendthrift clause.[5]

---

be distributed to such issue upon the principle of representation. The share set aside for my daughter shall remain in the trust for her lifetime, subject, however, to the power of invasion of corpus for her benefit herein granted to the trustees, and to a liberal investment policy toward my daughter if she shall desire to invest some of the funds in the improvement of her home, the trust taking an encumbrance thereon as security, or in providing funds for the improvement of the Laguna Beach property.' "

[4] " '(4) Should a grandchild die before becoming entitled to receive distribution of the entire share set aside for her, such share or its undistributed remainder shall go and be distributed to her lawful issue living at the date of said grandchild's death, on the principle of representation, or should no such issue be then living, such share shall go to augment the share then held for the benefit of my other grandchild, including by right of representation the then living lawful issue if any of such other grandchild if she shall be deceased; and if both of my granddaughters should be deceased leaving no issue, then my daughter, if living, shall enjoy the benefit of all the trust property for her lifetime.' "

[5] " '(6) Unless terminated at an earlier date under the foregoing provisions, this trust shall cease upon the death of the last surviving of my said daughter and my said two grandchildren.

" '(7) If the payments from this trust to which my daughter is entitled shall be insufficient in the discretion of the trustees to provide for her reasonable support, care and comfort, the trustees may pay to her or apply for her benefit so much of the principal as the trustees may deem proper or necessary for that purpose, but such payments shall not exceed the principal set aside for her, and shall be deducted from it. If the education of my granddaughters is not otherwise provided for, or to the extent that it is not provided for, I request my trustees to assist each of them financially while remaining in college, allowing not exceeding $2500.00 per year for each of them for that purpose. The primary purpose and intent in creating this trust is to provide for the income beneficiaries, and the rights and interest of remaindermen are subordi-

The provisions in clause " '(1)' " set forth the testatrix's express intent that if her daughter predeceased her, the daughter's share would go to the granddaughters and their issue, to the exclusion of the remaindermen, unless both granddaughters died without issue while a portion of the trust estate was still undistributed. The failure to make a similar provision, to control the disposition of the property in the event the daughter died after the testatrix, has produced for that contingency, a different disposition of the testatrix's property. Clause " '(5)' " disposes of "any of the trust estate not disposed of under the foregoing provisions. . . ." There is no other provision of the trust disposing of the share of the daughter which was created when she survived the testatrix. The daughter's share, therefore, goes to and should be distributed to the remaindermen upon her death.

The statutory and decisional rules governing the construction of wills, which may be deemed applicable to a trust created by will, have been collated as follows: "Various rules for the interpretation and construction of wills are found in the Probate Code and in court opinions. A 'will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full extent, it must have effect as far as possible.' (Prob. Code, § 101.) 'The words of a will are to receive an interpretation which will give to every expression some effect, rather than one which will render any of the expressions inoperative; and of two modes of interpreting a will, that is to be preferred which will prevent a total intestacy.' (Prob. Code, § 102.) (See, also, *Estate of Phelps* (1920) 182 Cal. 752 [190 P. 17]; *Estate of McCurdy* (1925) 197 Cal. 276, 282 [240 P. 498]). All 'the parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole; but where several parts are absolutely irreconcilable, the latter must prevail.' (Prob. Code, § 103.) 'A clear and distinct devise or bequest cannot be affected by any reasons assigned therefor, or by any other words not equally clear and distinct, or by inference or argument from other parts of the will, or by an inaccurate recital of or reference to its contents in another part of the will.' (Prob. Code, § 104.) 'A devise of the residue of the testator's

nate and incidental to that purpose. The provisions of this trust shall be liberally construed in the interests and for the benefit of the income beneficiaries.

" '(8) The interest of beneficiaries in principal or income shall not be subject to claims of their creditors or others nor to legal process and may not be voluntarily or involuntarily alienated or encumbered.' "

real property, or a bequest of the residue of the testator's personal property, passes all the real or personal property, as the case may be, which he was entitled to devise or bequeath at the time of his death, not otherwise effectually devised or bequeathed by his will.' (Prob. Code, § 126.) 'The making of a will raises a presumption that the testator intended to dispose of all his property. Residuary clauses are generally inserted for the purpose of making that disposition complete, and these clauses are always to receive a broad and liberal interpetation, with a view of preventing intestacy as to any portion of the estate of the testator, and this general rule is in harmony with the declaration of our code that the provisions of a will must be construed, if possible, so as to effect that purpose.' (*O'Connor* v. *Murphy* (1905) 147 Cal. 148, 153 [81 P. 406] ; see, also, *Estate of Beldon* (1938) 11 Cal.2d 108, 112 [77 P.2d 1052].) The prevailing principle is that the function of the court is to construe a will, not to make one; to ascertain the testator's intention as expressed and, if lawful. give it effect. (*Estate of Moorehouse* (1944) *supra*, 64 Cal.App.2d 210, 216 [148 P.2d 385], and cases there cited.)'' (*Estate of Lefranc* (1952) 38 Cal.2d 289, 295-296 [239 P.2d 617] ; and see *Estate of Salmonski* (1951) 38 Cal.2d 199. 209 [238 P.2d 966] ; *Estate of Warner* (1960) 183 Cal.App.2d 846, 854 [7 Cal.Rptr. 319] ; *Estate of Hotaling* (1946) 72 Cal.App.2d 848, 852 [165 P.2d 681] ; and *Estate of Moorehouse* (1944) 64 Cal. App.2d 210, 215 [148 P.2d 385].)

Although the disposition under another contingency is inconsistent with the disposition under the contingency which has actually occurred, it does not render the latter ambiguous. ■ The case is governed by the following principle: ''A clear and distinct devise or bequest cannot be affected by inference or arguments from other parts of the instrument. (Prob. Code, § 104; *Estate of Moorehouse, supra,* 64 Cal. App.2d 210, 215.)'' (*Estate of Salmonski, supra*, 38 Cal.2d 199, 209; and see *Estate of Barnes* (1965) 63 Cal.2d 580, 584 [47 Cal.Rptr. 480, 407 P.2d 656] ; *Estate of Beldon* (1938) 11 Cal.2d 108, 112 [77 P.2d 1052] ; *Estate of Swan* (1936) 5 Cal. 2d 635, 639 [55 P.2d 1171] ; *Estate of Bailess* (1967) 249 Cal.App.2d 970, 976 [57 Cal.Rptr. 850] ; *Estate of Townsend* (1963) 221 Cal.App.2d 25, 27-28 [34 Cal.Rptr. 275] ; *Estate of Kincaid* (1959) 174 Cal.App.2d 84, 88 [344 P.2d 85].) In *Estate of Moorehouse, supra,* the court stated: ''The court's function is to construe a will, not to make one; to ascertain the testator's intention as expressed, not some unde-

clared, imaginary purpose; and, if the language be ambiguous, to resort to the circumstances of the execution of the testamentary document. (*Estate of Johnson*, 107 Cal.App. 236, 239 [290 P. 314].) The cardinal rule of construction requires that the intention of the testator be ascertained and that if lawful it be given effect (*Estate of Young*, 215 Cal. 127, 130 [8 P.2d 846]; *Estate of McCray*, 204 Cal. 399, 402 [268 P. 647]) even though the disposition of his estate be unequitable, unwise or capricious. He may transmit without regard to moral or natural claims upon his bounty. (*Estate of Lindsay*, 136 Misc. 555 [241 N.Y.S. 513, 517].) Neither is he bound to bequeath it in such a manner as to gain the approbation of his contemporaries, the wise or the good. (*Estate of Wayne*, 134 Ore. 464 [291 P. 356, 294 P. 590, 79 A.L.R. 1427].) '' (64 Cal.App.2d at p. 216.)

The granddaughters approach the case as though the provisions of the trust should be interpreted from a consideration of all of the provisions of the will. Although the remaindermen do not expressly countenance this approach, they did stipulate to a record, of which the entire will was made a part, and they have argued the case to meet the grounds asserted by their adversaries. It is, therefore, appropriate to consider the granddaughters' contention in support of the trial court's order.

They assert that consideration of the entire will demonstrates a general plan of the testatrix to prefer the granddaughters over the collateral relatives who are named as remaindermen. They refer to the following provisions: (1) Paragraph ''FOURTH'' in which she gave and bequeathed her jewelry, silver, books, pictures, paintings, works of art, household furniture and furnishings, clothing and other personal effects to her daughter, or if her daughter predeceased the testatrix, to the granddaughters; (2) Paragraph ''FIFTH'' in which she gave, devised and bequeathed oil royalty rights to the daughter, or, if she failed to survive, to the granddaughters outright or in trust, depending on the size of the estate; and (3) Paragraph ''SIXTH'' which provided for the devolution of her estate, if the net value did not exceed $25,000, and clearly indicated that the remaindermen were not to take unless the daughter and granddaughters predeceased the testatrix without leaving any issue then surviving.[6]

---

[6] ''SIXTH: In the event the net value of my probate estate does not exceed the sum of $25,000.00, then the whole thereof shall go share and share alike to the following three persons, namely, my said daughter,

In addition, they refer to the provisions of clause " '(1)' " of the dispositive provisions of the trust (par. "SEVENTH"), as set forth above, which provided for the contingency of the daughter's predeceasing the testatrix. They also point to the declaration in clause " '(7)' " which recites: "The primary purpose and intent in creating this trust is to provide for the income beneficiaries, and the rights and interest of remaindermen are subordinate and incidental to that purpose. The provisions of this trust shall be liberally construed in the interests and for the benefit of the income beneficiaries."

The foregoing can, in no sense, support the conclusion of the lower court that the provisions of the will gave the remaindermen no interest in the estate of the testatrix because they could only inherit under the provisions and upon the contingencies set forth in paragraph "SIXTH." (See fn. 2, *supra*, Findings 4, 6, 9 and 10.) It is obvious that even though daughter, granddaughters and their issue were to be preferred under the trust, that clause " '(5)' " was intended to give the remaindermen a contingent interest in the trust estate which would come into fruition, in any event, if daughter and granddaughters all died without issue during the continuance of any portion of the trust. There is no warrant for a contrary finding.

The granddaughters rely upon the following principle: "It is also well settled that where the provisions of a will are capable of two interpretations, under one of which those of the blood of the testator will take, while under the other the property will go to strangers, the interpretation by which the property goes to those of the blood of the testator is preferred. (*Estate of Wilson*, 65 Cal.App. 680, 689 [225 P. 283].)" (*Estate of Hartson* (1933) 218 Cal. 536, 539-540 [24 P.2d 171]; and see *Estate of O'Connor* (1955) 130 Cal. App.2d 258, 264 [278 P.2d 748]; and *Estate of Boyd* (1938) 24 Cal.App.2d 287, 289-290 [74 P.2d 1049].) The postulate is that the will be capable of two interpretations. Here the will has apparently inconsistent dispositions for varying contingencies, but the disposition to be made on the contingency which has occurred is not ambiguous or uncertain

---

. . . and her two children, . . . . If any of them should predecease me leaving issue, the issue shall take the parent's share by right of representation. If there shall be no such issue, the survivor or survivors and the issue of any of said three persons who have died leaving issue shall take all, according to the right of representation. If none of them shall survive me, then under such circumstance, the same shall go share and share alike to [the remaindermen]."

and is free from doubt. Under these circumstances the court cannot supply a substitute disposition to favor those of the whole blood. (*Estate of Salmonski, supra,* 38 Cal.2d 199, 213.)

Although unrecognized by the parties, the trial court has, in effect, raised a gift by implication and substituted it for that expressed by the testatrix. There is precedent for implying a gift from all of the provisions of the instrument under certain circumstances, but not when it will serve to contradict other express, unambiguous provisions.

In *Brock* v. *Hall* (1949) 33 Cal.2d 885 [206 P.2d 360, 11 A.L.R.2d 672], the court implied a gift under a contingency, for which no provision had been made in an *inter vivos* trust, in order to prevent a reverter by law to the settler. The court observed: ''The implication of gifts in wills rests upon the primary rule of construction that the duty of the court in all cases of interpretation is to ascertain the intention of the maker from the instrument read as a whole and to give effect thereto if possible, and it is well settled that, where the intention to make a gift clearly appears in a will, although perhaps imperfectly expressed, the court will raise a gift by implication. (*Estate of Blake,* 157 Cal. 448, 468 [108 P. 287]; *Estate of Sloan,* 7 Cal.App.2d 319, 340 [46 P.2d 1007]; see *Estate of Heard,* 25 Cal.2d 322, 328 [153 P.2d 553]; *Estate of Franck,* 190 Cal. 28, 31 [210 P. 417])'' (33 Cal.2d at pp. 887-888; and in addition to cases cited, see *Estate of Campbell* (1967) 250 Cal.App.2d 576, 583 [58 Cal.Rptr. 723]; *Estate of Hubbard, supra,* 122 Cal.App.2d 942, 947; and 4 Bowe-Parker, Page on Wills, § 30.18, pp. 119-127.)

''When the intention to make a gift clearly appears from the instrument taken by its four corners and read as a whole, considering its general scheme, the property involved, and the persons named as beneficiaries, the gift may be implied. (*Estate of Franck,* 190 Cal. 28, 31 [210 P. 417]. )Although the court may not indulge in conjecture or speculation simply because the instrument seems to have omitted something which it is reasonable to suppose should have been provided, a gift will be raised by necessary implication where a reading of the entire instrument produces a conviction that a gift was intended. (*Estate of Blake, supra,* 157 Cal. at p. 468; see *Estate of Franck, supra,* 190 Cal. at p. 32; *Estate of Swan,* 5 Cal.2d 635, 639 [55 P.2d 1171]; *Estate of Vizelich,* 129 Cal.App. 347, 353 [18 P.2d 773]; *Metcalf* v. *Framingham Parish,* 128 Mass. 370, 374.) . . ,'' (*Id.* p. 889.)

"The trustor relies on California decisions where the court, while recognizing that gifts by implication may be raised in appropriate circumstances, refused to do so on the facts there presented, but those cases are not controlling because in none of them, was the language or general plan simi·ar to the wording and dispositive scheme involved here and in none of them did the court find that there was a clear intent to make a gift. (See *Estate of Swan,* 5 Cal.2d 635 [55 P.2d 1171]; *Estate of Wattson,* 66 Cal.App.2d 743 [153 P.2d 87]; *Estate of Ottoveggio,* 62 Cal.App.2d 880 [145 P.2d 700]; *Estate of Kruce,* 10 Cal.App.2d 426 [51 P.2d 1174]; *Estate of Vizelich,* 129 Cal.App. 347 [18 P.2d 773].) The intent of the maker as disclosed by the will or trust document determines whether a gift should be raised by implication, and each decision must of necessity depend upon the wording of the particular instrument involved when considered with the intention manifested by the document as a whole. In the present case, when the language used is considered in the light of the dominant dispositive plan of the trust instrument, the necessary implication, as we have seen, is that a gift to Mildred was intended if Carolyn died a widow without issue, and the probability that the trustor intended to make a gift in this contingency is so strong as to nullify the existence of any other possible intent. Accordingly, the trial court erred in sustaining the demurrer to the complaint wherein Mildred sought to reach the remaining assets of the trust." (*Id.,* pp. 891-892; and in addition to cases cited see: *Estate of Barnes, supra,* 63 Cal.2d 580, 584; *Estate of Lefranc, supra,* 38 Cal.2d 289, 296; *Estate of Salmonski, supra,* 38 Cal.2d 199, 213-214; *In re Reinhardt* (1887) 74 Cal. 365, 369 and 371-372 [16 P. 13]; *Estate of Bailess, supra,* 249 Cal.App.2d 970, 975; *Estate of Kincaid, supra,* 174 Cal.App.2d 84, 87-88; *Estate of Maxwell* (1958) 158 Cal.App.2d 544, 547-550 [322 P.2d 1018]; and *Union Nat. Bank* v. *Hunter* (1949) 93 Cal.App.2d 669, 674-675 [209 P.2d 621].)

An examination of the cases cited in *Brock* v. *Hall,* and those cases which have followed it, fails to reveal a situation where a gift has been implied to disp!ace an express gift over. The statements are legion to the effect that "a court may not write a will which the testator did not write." (*Estate of Barnes, supra,* 63 Cal.2d 580, 583; *Estate of Lefranc, supra,* 38 Cal.2d 289, 296; *Estate of Beldon, supra,* 11 Cal.2d 108, 112-113; *Estate of Townsend, supra,* 221 Cal.App.2d 25, 28; *Estate of Kincaid, supra,* 174 Cal.App.2d 84, 88; *Estate of*

*Maxwell, supra,* 158 Cal.App.2d 544, 550-551; *Union Nat. Bank* v. *Hunter, supra,* 93 Cal.App.2d 669, 677; *Estate of Moorehouse, supra,* 64 Cal.App.2d 210, 216; and *Estate of Kruce, supra,* 10 Cal.App.2d 426, 429.)

This case is governed by the following statement in *Estate of Kruce, supra:* ''We are not asked to construe an imperfect or incomplete disposition, but to supply one which is not expressed at all, and which, we think, is not necessarily implied. If the testator omitted, as we are satisfied he did, to make a specific disposition of the remainder of the trust estate in the event that has occurred, that omission may not be supplied by the court. This is true whether the omission be the result of design or oversight. Since the will is silent as to any specific disposition of the remainder under the facts presented, we cannot say that it was any more the intention of the testator to leave the property in question to appellants, under the proven circumstances, than it was to have it go to the estate of the deceased wife, as a part of the residue bequeathed to her. The residuary provision is controlling in the absence of a contrary specific disposition.'' (10 Cal.-App.2d at p. 429.)

It would be pure speculation to presume that if the testatrix's attention was called to the inconsistency between the disposition contemplated under the contingency in paragraph ''SIXTH'' and under the contingency in the proviso in clause '' '(1)' '' of part A of paragraph ''SEVENTH,'' and the disposition under clause '' '(5),' '' as the facts resulted, that she would have revised her will to provide for her granddaughters. It is conceivable that she may have had some feeling for her husband and his family and been willing to benefit them after taking care of her own descendants on the contingencies outlined. It is also conceivable that she might not have given her granddaughters a remainder over, but have given her daughter a power to appoint the remainder of her share.[7]

---

[7] The problems of supplying the testatrix's implied interest are manifold. One granddaughter was born November 2, 1940, the other August 30, 1946. The testatrix died January 25, 1961. By the terms of her will (cl. (3) of part A of par. SEVENTH) the elder granddaughter would not enjoy possession of one-half the corpus of her share of the trust until November 2, 1961. If the daughter and both granddaughters had died prior to that date, without any of them leaving issue, it is obvious that the remaindermen would have taken under clause '' '(5).' '' On the death of the daughter, December 9, 1964, one-half of the elder granddaughter's share was still to be held in trust until November 2, 1965; and the halves of the youngest granddaughter's share would not vest in

Even if the testatrix had intended to give her granddaughters the remainder of the share of the trust estate left to her daughter, such instructions to the scrivener could not be used to impeach the will as actually drafted and executed. *"A mistake of omission cannot be corrected.* If the testator actually intended to make a gift to A but the instrument as written fails to do so, or if he intended to make a different kind of gift, the will must stand. Correction would require the addition of a *new provision,* and the court cannot add anything to the will; a testamentary gift can only be made by the testator in writing. (See *Estate of Lyons* (1939) 36 Cal. App.2d 92, 95 [96 P.2d 1018].)' (4 Witkin, Summary of Cal. Law (7th ed. 1960) § 143, p. 3135.)'' *(Estate of Townsend, supra,* 221 Cal.App.2d 27-28.)

The order is reversed with directions to revise the findings of fact, conclusions of law, and the order in accordance with the views expressed herein.

Molinari, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied October 26, 1967.

---

possession until August 30, 1967, and August 30, 1971, respectively. If the implied intent of the testatrix were that found in paragraph "FIFTH," the deceased daughter's share should have gone into the respective trusts. The remaindermen at this date still have a contingent interest in the remaining interest in the younger granddaughter's share, and would take if she and her sister should both die without leaving issue prior to August 30, 1971. They would have to be granted the same interest in a portion of the lapsed share. On the other hand, if one disregards both the residuary share in clause '' ' (5),' '' and the implied intent to defer the granddaughters' enjoyment of any interest each may have in the principal of the testatrix's estate, there remains the question of whether the deceased daughter's share passes to the granddaughters as purchasers, as heirs of their mother, or as heirs of their grandmother. If as purchasers, there is, as noted above, an obvious conflict with those provisions of the will upon which the granddaughters must rely to defeat the express residuary clause. If as heirs of their mother, the proper party to claim the lapsed remainder would be the representative of the estate of the mother. If as heirs of the grandmother, there is an obvious conflict in the disposition of the residue of the testatrix's estate, because it is expressly provided by the terms of the will and the trust created by the provisions of the will that the residue of her estate should pass through the trustees to the remaindermen.